ALBANY,
Dec. 1835.

GREGORY & SELMAN *vs.* DODGE & GREEN.

Gregory
v.
Dodge.

Where, to a bill in chancery filed to obtain an account of mercantile transactions, the defendant put in an answer alleging that one A. B , a third person not a party to the suit, was a partner in trade with the complainants, carrying on business in his own name, and that the concern conducted by him was largely indebted to the defendant, and on a replication being filed denying the truth of the answer, A. B. was *examined as a witness* for the defendant, and proved all the allegations made by the defendant ; *it was held* that A. B. was a competent witness, notwithstanding the effect of his testimony was to charge the complainants with a *debt* for which he was individually liable, and of the liability of the complainants for the payment of which there was no proof independent of such testimony.[*]

An objection to the *competency of a witness* on the *ground of interest* must be taken before the closing of the proofs ; it is too late to object when the cause is brought to a hearing on the pleadings and proofs.

APPEAL from chancery.   Gregory and Selman filed a bill in chancery against Dodge and Green, for an account in relation to certain mercantile transactions had between them.   The complainants resided at Marblehead, in the state of Massachusetts ; the defendants in the city of New-York.   The business in reference to which an account was asked, was the buying and selling of fish ; the complainants from time to time having consigned large quantities of fish to the defendants, which, by an agreement between them made about the 1st January, 1827, the defendants were to sell and account for, taking one half the profits.   Dodge alone put in an answer, Green having died after the filing of the bill.   He alleged that the complainants were partners in trade with one *Levitt Kingsbury*, who carried on business as a dealer in fish and other merchandize at *Albany*, under articles of copartnership entered into by him with the complainants on the 29th June, 1826, and that at the solicitation of Kingsbury and of Gregory, one of the complainants, the firm of Dodge & Green agreed to give credit, make acceptances, and assume responsibilities, to enable the complainants and Kingsbury to carry

---

[*] See *dissenting opinion* of *Senator* TRACY.

on their business at Albany. He referred to an account annexed to his answer, which he alleged to be a true account of all shipments made to him by the complainants, and of all dealings and transactions of the firm of Dodge and Green with the complainants and Kingsbury, exhibiting a balance of $257,80, as due to the firm of Dodge & Green on 5th September, 1827, for which amount they accepted the note of Kingsbury, and thus the account was settled. The defendant also annexed to his answer two other accounts, one as kept with *Gregory & Selman,* and the other with *Levitt Kingsbury,* shewing a balance on each in favor of his firm; and he alleged, in his answer, that remittances made to his firm by Kingsbury were placed to the credit of the complainants and of Kingsbury indiscriminately, without objection by either of them. A replication was filed and proofs taken. *Levitt Kingsbury* appeared as a witness on the part of the defendant before the examiner, and was sworn, the counsel for the complainants *reserving the right thereafter to except to his testimony, if he thought proper, on the ground of interest.* The witness then proceeded to testify. His ex-examination was interrupted, and was subsequently recommenced before another examiner, who made a note on the deposition of the witness, in these words: " This examination is continued before me by the consent of the counsel of both parties, the complainants' counsel reserving every objection to the competency of the witness, and all other legal exceptions." The first examination of Kingsbury was commenced on 10th December, 1829, and the second on the 5th April, 1830. Kingsbury *fully proved the answer.* The defendant exhibited the *articles of agreement* between the complainants and Kingsbury, referred to in his answer, whereby the complainants covenanted that they would from time to time " send, remit and consign to. Kingsbury, vessels, goods and merchandize, to be by him received as their agent and consignee, and sold, kept, bartered and managed in such way and manner as he should think best and most for their interest;" and Kingsbury engaged, on his part, to dispose of such consignments as should be made to him, agreeably to such instructions as he should from time to time receive, or in the manner most beneficial to the concern.

The profits and losses (after deducting the rent of the store occupied by Kingsbury) to be equally divided. Several witnesses were examined on the part of the complainants, and sundry letters between the parties and others papers were produced as exhibits. *Kingsbury* was insolvent when he commenced business with the complainants, and the complainants stopped payment in February, 1828.

The cause was heard on the pleadings and proofs before the *vice chancellor* of the first circuit, who ordered the *deposition of Kingsbury to be suppressed,* and made a reference to a master to *take and state an account between the parties,* excluding therefrom all accounts in which Kingsbury was interested, either solely or jointly with the complainants as copartners, and that in taking the account, the master exclude the testimony of Kingsbury. From this order and decree the defendant appealed to the Chancellor, who *reversed* the whole of the order and decree, except the reference to the master to take and state the account, and directed the proceedings to be remitted, &c. The CHANCELLOR, on making his decree, delivered the following opinion :

"No objection was made to the competency of Kingsbury as a witness before the examiner ; and as the nature of his interest, if he had any, was such that it might have been released if a distinct objection had been made before the testimony was closed, it was too late to object to his competency at the hearing. *The Mohawk Bank* v. *Atwater,* 2 *Paige's R.* 54. *Town* v. *Needham,* 3 *id.* 546. Again : the testimony of this witness was not completed before the examiner until some months after the new rules of this court went into operation ; and the 85th rule expressly declares, that no objection to the competency of a witness shall be made at the hearing, unless such objection was made before his testimony was closed. The reservation which the complainants' counsel made, at the commencement of the examination, of a right to except to the testimony of the witness thereafter, on the ground of interest, if he should think proper to do so, was neither a compliance with the letter or spirit of the rule. It amounted to nothing more than saying, "If the witness you are about to examine discloses any thing that shows he is in-

terested, and if I shall think it fit for the interest of my clients to exclude his testimony on that account, I reserve then the right to make that objection." But the object of requiring the objection to the competency of a witness to be made before his testimony is closed, was to enable the party calling him to obviate the objection if possible by a release, or if that could not be done, to give the party an opportunity of substantiating the facts by other witnesses. When a witness is called by one party, if the adverse party intends to prove by other evidence that the witness is interested in favor of the party calling him, or that he is otherwise incompetent, the objection to his competency, and the nature of the interest or other disqualification, should be distinctly stated, in the same manner as an objection to the competency of a witness is taken at the circuit; except that it will not be necessary for the party making the objection, to produce his evidence in support thereof previous to the examination of the witness, where the nature of the disqualification is particularly stated, and the objection to the competency of the witness on that ground is noted by the examiner before the testimony of the witness is closed, so that the party calling him may have a fair opportunity to obviate the objection where it can be obviated. It will be sufficient if the party making the objection produced his proof in support of the same at any time before the proofs in the cause are closed, and while the examination of the witness is going on before the examiner. Where the interest appears from the examination of the witness himself, the objection should be distinctly made, and should be passed upon or noted by the examiner when the facts disclosing such interest are sworn to by the witness, or at least before the examination is closed.

"Upon the merits of this question also, I do not perceive that this witness was interested in defeating a recovery in favor of these complainants against the defendant. If, as he testified, the matters in controversy were matters in which he was jointly concerned with the complainants as a partner, then he was interested in having them recover the whole sum claimed, as he could call upon them to account to him as a partner therefor, although it had been recovered in a suit prosecuted

in their names only ; and if he was also liable to the defendant as a partner of the complainants, for the amount claimed as an offset against the partnership demands, it only balanced his interest so as to make him indifferent between the parties. The fact that his copartners were insolvent did not alter the nature of his interest; because, if they had obtained a decree against the defendant, he could, by filing a bill to settle the copartnership accounts, have prevented them receiving the money until the whole copartnership debts, including any balance which might be due to him from his copartners, were settled or provided for. The fund being within the jurisdiction of this court, it might be reached on such a bill, although Gregory & Selman were insolvent and out of the state. If Kingsbury is considered only as an agent of the complainants, from the agreement which is made an exhibit in the cause, his interest in defeating a recovery against Dodge in favor of his principal is not thereby increased. In any other view I have been able to take of this case, the witness, at the most, was interested in the question, as to some of the matters upon which he was examined, but was not interested in defeating the complainants as to the matters in controversy in this suit. The order to suppress his deposition with costs, and so much of the decretal order of reference as is appealed from, are erroneous, and must be reversed, with costs."

From the decree of the chancellor the complainants appealed to this court, where the cause was argued by

*R. Sedgwick,* for the appellants.

*M. Hoffman,* for the respondent.

*Points insisted on by the counsel for the appellants :*

1. Kingsbury was not a competent witness to prove that, for which he was called : that is, that the complainants are chargeable with the claim of the defendant against him. The question in dispute between the parties is not whether the complainants and the defendant were jointly interested in the shipments of the fish mentioned in the bill, nor whether an

account is to be taken; but it arises upon the new claim set up in the defendant's answer, to charge the complainants with a large amount of debts contracted by Kingsbury in his own name, on the ground that he and the complainants were copartners. Kingsbury, admitting his own indebtedness, is called to prove that the complainants are bound to share the debt with him; in other words, he comes to make the complainants pay the whole or the half of his debts.

2. He is interested in both the question and the event. He is interested in the question whether the complainants were partners with him either in the Albany concern or in the shipments of fish; because, making them partners in the Albany concern makes them bear part of the loss of a losing business, and making him a partner in the shipment of fish, makes him share in the profits of a profitable business. He is interested in the event, because the decree establishing a partnership, would establish it to the advantage of the witness between him and the complainants; and even if it did not establish such partnership as between the complainants and the witness, yet the witness would be a gainer, because the complainants would be obliged to pay what the witness would otherwise be answerable for; and as they are stated by him to be insolvent and largely indebted to him, he would be able to offset this debt against them, in case of their prosecuting him for the amount paid by them.

3. Kingsbury being thus incompetent, it was not necessary that his testimony should be objected to before the examiner: because, 1. The examination was gone into before the new general rules of 1830 went into effect, and no such rule existed in chancery before; and 2. His interest could not have been released.

4. The objection however was taken, and reserved by consent of counsel.

5. Even if Kingsbury's testimony were admitted, it would not make out that the complainants are chargeable with Kingsbury's debts: because, 1. It would not prove any partnership between him and the complainants; and 2. If there were in fact a special partnership between them, the

dealings out of which the defendant's claims arise. were not within it.

6. And though it were proved that the complainants are chargeable with Kingsbury's debts, yet the amount due by him and them to the defendant could not be set off in this suit: because, 1. The claim sought to be set off is due not from the complainants alone, but from the complainants and another person; and 2. If the set-off could be allowed at all, it could be obtained only by means of a cross-bill, to which Kingsbury should be a party.

*Points insisted on by the counsel for the respondent :*

1. The appellants' counsel did not object, at the examination, to the competency of Kingsbury as a witness for the respondent. It is clear that the language noted by the examiners does not import an express or direct objection, but is a mere declaration of his right to except thereafter, in case he should deem it advisable.

2. An objection to his competency as a witness should have been made *in express terms* before his testimony was closed, so as to prevent surprise and give the respondent an opportunity to release his interest, or to prove by other evidence the facts testified to by him.

3. There being no objection to his comptency, it is clear that his deposition is good evidence for the party who called him, and can be used in the cause.

4. There was a partnership existing between Kingsbury and the appellants, in relation to the matters set forth in the accounts of the respondent and charged against them.

5. Kingsbury was legally competent to testify as a witness, because his interest was balanced between the parties. If Gregory & Selman recover a balance against Dodge, then the witness can claim from them his proportion; and if Dodge should sue the witness and recover against him, then he can turn round and claim contribution from the appellants.

6. But if Kingsbury is not regarded as a copartner of the appellants, then he was their authorized agent, and his business transactions with the respondent (being within the scope of his authority) are properly chargeable against them, and

ALBANY,
Dec. 1835.

Gregory
v.
Dodge.

form a valid set-off to any claims that they may have against the respondent.

The following opinions were delivered:

By Mr. Justice NELSON. Whether Kingsbury is a competent witness for the defendant below, is to be determined by a careful consideration of his testimony taken by the examiners, as the exception, if available at all, (a point I am not disposed to examine, though I must say I think it very loosely taken,) was founded upon it ; and it necessarily follows, in the investigation and decision of the question, we must look at the whole of it, and upon the assumption that it is true. Had the complainants desired to put the question upon any different footing, they should have objected preliminarily to him on the ground of interest, and proved it by other witnesses. Having relied upon the interest proved by the witness himself, we must take all the facts brought out by him, and decide upon the whole matter as presented by him.

The true construction of the article of agreement between the witness and the complainants, of the date of the 29th June, 1826, constitutes them general partners. The case of *Dobb* v. *Halsey*, 16 *Johns. R.* 34, is very much in point on this question. A written agreement was there proved between the plaintiffs and one Moore, by which the latter covenanted to superintend the saw pits and lumber yard of the plaintiffs for one year, in consideration of receiving one-third part of the net profits. The court decided that the agreement created a partnership, as well as it regarded the partners themselves as third persons ; and cases were referred to in support of the principle upon which the decision was placed. Indeed I do not remember that this was made a serious question on the argument, nor do I deem it very material in the result. I have said that the witness and complainants were general partners. The latter were to remit and consign to Kingsbury "vessels, goods and merchandize," to be by him received, managed, sold and bartered, agreeably to instructions, or in such other way and manner as he should think best for the benefit of the concern. Here is no restriction to deal in a particular article, or in a specific branch of business. "Goods

and merchandise" are terms broad enough at least to embrace the whole of the business carried on by the parties with the house of Dodge & Green. I have not been able to discover any part of the trade or business carried on by Kingsbury with this house, but what is fairly embraced within the scope of the partnership; and indeed no part of it but what appears to have been conducted in fact with a direct reference to the establishment of the copartners at Marblehead. I have no difficulty, therefore, in arriving at the conclusion that Dodge and Green were justified in regarding the complainants and Kingsbury as partners in all their dealings with them; and this conclusion is supported as well by the construction of the written agreement above referred to, as by the testimony of Kingsbury. He proves that he was connected with the complainants in all the trade carried on by the parties between Marblehead, New-York and Albany, of which he had any knowledge; and the correspondence produced as exhibits fully corroborates this view of the case. Assuming then the ground that Kingsbury, Gregory & Selman were partners in all their respective dealings with the house of Dodge & Green, about which we do not entertain a doubt upon the evidence in the case, the main question with which we started is reduced to narrow limits, and divested of most of its intricacy.

The bill is filed to obtained an account growing out of the mutual dealings of the firm of Kingsbury, Gregory & Selman on the one side, and of Dodge & Green on the other. Kingsbury not having been made a party complainant, is called as a witness for the defendants, and is objected to on the ground of interest. At the first view it appears quite obvious that his interest lies wholly against the party calling him, as he would be entitled to one half of any balance that might be found due his copartners. Such would be the plain and simple conclusion, were it not for the fact that he is individually holden to the defendants on a portion of the account. It appears throughout the whole of the operations of the two houses at Albany and Marblehead, that the business was conducted at each place in the name of the persons immediately superintending it. Drafts and notes were drawn, and acceptances given in

the name of Kingsbury at one place and of Gregory & Sel-man at the others; and though Dodge & Green have a right to look to the partnership responsibility, when it is establish-ed, they may also, if they please, seek their remedy against Kingsbury individually to the amount of the paper drawn in his own name, and which is now in their hands. The ac-counts show some $1000 or more of this description of paper. It was all drawn, as sworn to by Kingsbury, for the benefit of the general concern, and the proceeds applied accordingly. The argument in support of the objection to the witness is, that he is called to prove facts that will discharge him from his individual liability on these accounts. This is effected by applying to the payment of them other accounts in which the complainants own one half, making the witness inter-ested, that is, gain by this operation half the amount from which he is thus discharged; because, as he is entitled to only one half of the fund the complainants are seeking to collect, any deduction from it by a demand on which he is solely responsible, makes of course a difference in his favor of half the amount. In other words, he pays his own debt by applying another half which is the complainants'. For this rea-son they object to him. If the case stood upon this footing, it would fall within the principle decided in *Marquand v. Webb & Webb*, 16 *Johns. R.* 89. That was an action by the plain-tiffs below (the Webbs) to recover for repairs done to the *Spitfire*, a privateer. One Gomez, who testified that he was a part owner, was offered by the plaintiffs to prove that the defendant was also a part owner. The court, after ad-mitting the difficulty of the point, upon full consideration re-jected the witness, putting the case upon the ground, that be-ing liable himself for the repairs as part owner, he was in-terested in multiplying the number of owners, as in the con-tribution it lessened the amount he was bound eventually to pay. If the defendant succeeded, the witness would be left responsible for the whole of the repairs; if the plaintiffs, he would be holden to contribute at most but a portion. It was also believed that in a suit by the defendant against the witness for contribution, the record of the former recovery would be conclusive evidence of the fact of part ownership, as he would not be permitted to allege that the recovery

was wrongful. This observation was made to meet an argument that in a suit against the witness for contribution, if it could be shown that the plaintiff was not a part owner, he might recover the whole of the repairs, as the witness confessedly was a part owner. I may add here, that the case of *Ashman* v. *Goldney and another*, 2 *Starkie's Cas.* 414, and *Blacket* v. *Wier, in bank*, 3 *Barn. & Cress.* 385, are directly opposed to the case of *Marquand* v. *Webb*, and the answer given to the above argument there used in favor of the interest was, that the record of the former recovery would not be conclusive of the fact of partnership, and that if the defendant was not a partner with the witness, he might afterwards recover the whole amount in a suit against him. This of course could be only upon the assumption that the first recovery was without foundation, or wrongful; a somewhat questionable ground upon which to sustain a suit, and rather a novel mode of redress for an unjust judgment. In the recent case of *Ripley* v. *Thompson and others*, 12 *Moore*, 55, the two cases above referred to seem to have been overruled, though it does not appear from the report they were cited on the argument. The decision there is in conformity to the principle of the decision of the supreme court in *Marquand* v. *Webbs*. The copartner, who was offered as a witness for the plaintiff, was rejected on the ground that he was interested in procuring a verdict against the defendants, it having been shown that he was himself *prima facie* individually holden for the entire demand; and if collected of them, he would be liable only to contribute his share as partner. He was therefore interested in throwing a part of the debt upon the defendants, as he thereby lessened his own. The idea that the defendants could recover of the witness the whole amount, if in fact they were not partners and the recovery therefore wrongful, the ground assumed by the judges of the king's bench in *Ashman* v. *Goldney*, and *Blacket* v. *Wier*, did not occur to the judges of the court of common pleas, or if it did, was not deemed a satisfactory answer to the objection. Thus far the principle of these cases seems to be applicable to the present; because, to simplify the question, the case may be viewed as if Dodge & Green had brought a suit to recover this account, (I mean the account for which Kingsbury is in-

dividually holden) against the complainants, and Kingsbury had been called as a witness to prove that it was a partnership account, and thereby secure a recovery against them ; it would then stand on the footing of *Marquand* v. *Webb*, in the supreme court, and *Ripley* v. *Thompson* in the common pleas of England. He would then throw half the amount upon the complainants, instead of being obliged to pay the whole of it ; they could not compel him to contribute more than half.

There is however a feature in this case not belonging to either of the above cases, and which I apprehend must clearly distinguish it. I have before said that the interest of Kingsbury must depend upon a consideration of the whole of his evidence, as it is put upon that ground by the exception and mode of proceeding : the complainants contending that he shows himself to be interested. Now it is clear, both from the articles of partnership and the evidence of Kingsbury, that Gregory & Selman are ultimately responsible for the *whole* of this account. They were to furnish for the Albany store all the "goods and merchandize," and Kingsbury was to sell, barter and dispose of the same, and the net profits were to be equally divided. Accordingly when an arrangemement was made with Dodge & Green to permit their credit or responsibility to be used in purchasing goods in the city of New-York, Gregory directed that whatever goods were bought by means of such credit, should be charged to the account of the complainants. Under this arrangement Kingsbury was authorized to buy goods in the city, and draw upon Dodge & Green, and the drafts were to be met when due by the complainants ; or he was to draw upon them directly in favor of Dodge & Green, which in the course of the business amounted to the same thing. All their dealings subsequently were obviously conducted upon this footing. How then is Kingsbury interested? He is no doubt liable upon these drafts, and also on notes given in exchange for acceptances of Dodge & Green, which went into the general concern ; and therefore it is said he is interested in throwing this liability upon the complainants. But suppose a recovery against him by Dodge & Green, and he obliged to pay them, he has a remedy over against the complainants. The debt is theirs. The goods for which

these drafts and notes were given were to be charged to them, and if they had kept their engagements, would have been taken up. The position of Kingsbury, then, is this: if the account is now settled in this suit, he is discharged from his individual liability; if not, he may be obliged to pay it, and to look to the complainants. The remedy may be attended with more difficulty in paying the account and being turned over to the complainants for reimbursement, than at once cancelling it by an adjustment now between these parties; and to the extent of this supposed difference the witness may be regarded as not indifferent. But upon the facts the remedy is as certain in the one case as the other. The witness may and will have a bias, because the discharge from liability is more speedy and practically more certain in one way than in the other; but upon established principles I think he is legally indifferent. *Buckland* v. *Tankard*, 5 *T. R.* 578, would sustain the objection on the ground of preponderance of difficulty; but that case is not now considered law in England. That was a suit by the endorsee against the acceptor, and the defendant called the drawer, who had also endorsed it in blank, and proposed to prove by him that the plaintiff had no interest in the bill, as the drawer had put it into his hands merely to receive payment from the acceptor. Lord Kenyon rejected him at the trial on the ground of interest, and when the case came up for a new trial, he adhered to his former opinion. It was contended he was indifferent, as in the event of a verdict either way he had a remedy. If the plaintiff succeeded, he could recover the amount of the bill from him; if he failed, then of the defendant, the acceptor. But Lord Kenyon said if the plaintiff should succeed, the witness would be put to much greater difficulties to get back the money, than he would if he should be foiled by means of his testimony. In *Birt* v. *Kershaw*, 2 *East*, 461, Lord Ellenborough says, I know of no other than the case of *Buckland* v. *Tankard*, which goes on the grouud of more or less difficulty in the witness establishing his interest against one or the other of the parties. All the other cases, he says, go on the broad ground of interest in the witness. Mr. *Phillips*, *p.* 55, and Mr. *Starkie*, *part* 4, *p.* 301, both refer to this case, and consider the principle of it as overruled, and the

ALBANY,
Dec. 1835.

Gregory
v.
Dodge.

objection going only to the credit of the witness. The case has also been disregarded in Massachusetts, 13 *Mass. R.* 210. A position taken by the court in *Ridley* v. *Taylor*, 13 *East*, 175, is directly opposed to the above case, and contains the true principle, and the one upon which I place this decision. There one partner drew a bill in the partnership name, and gave it in payment to a separate creditor in discharge of his own debt, and in an action by such creditor against the acceptors, it was ruled that either partner might be called by the defendant to prove, that the partner who drew the bill had no authority to do so in the name of the firm, and that the bankruptcy of the partners would not vary the question as to the competency of the witness. As to the innocent partner, it was conceded if the plaintiff recovered he would be liable to the acceptors, and therefore he appeared to be interested to defeat the plaintiff; but it was answered if the plaintiff recovered and the witness thus became liable, he had his remedy over against the other partners. He therefore stood indifferent in consequence of the remedy over to reimburse the amount he might be obliged to pay; and the remedy there as in this case against an insolvent copartner did not vary the question. Phillips and Starkie lay down the principle as established law. Indeed this rule of evidence was the necessary result of overruling the case of *Buckland* v. *Tankard;* it rests upon the broad ground that to render a witness incompetent there must be an existing, certain and definite interest : not remote or contingent. More or less difficulty in guarding his interest, in one event than in the other, is neither certain nor definite. It is contingent and remote. Mere preponderance of difficulties is of too uncertain and contingent a nature to afford any practical rule. In this case, if the account of Kingsbury should not be cancelled in the adjustment of the general accounts between the complainants and the defendant, he might be called upon to pay it; and then he must seek it of the complainants. A litigation might or might not be necessary, and if it should be, greater difficulty of course would attend that mode of saving himself harmless than the other. All this, however, depends upon circumstances which might well bias his mind and influence his credit; but the

certainty of the remedy over in law cannot be disputed upon the facts, and it is this alone that is regarded in the question of competency, as settled by abundant authority.

By Senator TRACY. There is scarcely any subject that occasions greater embarrassment to the ministers of the law, or that has produced a greater multiplicity of decisions than the extent and application of the rule for excluding witnesses on account of interest. The first impression would be, that nothing could be more simple or easy, when all the facts were known, than to decide whether a witness stood in such a relation to the subject matter of controversy, that his testimony could be productive of a personal advantange to himself; and yet it is found that the relations and bearings of litigations are frequently so ramified and complex, that when all the facts are ascertained that are necessary for showing the position in which the witness stands, it often becomes a question of extreme nicety, I may almost say of metaphysical subtlety, to determine whether he can be so affected by any decision of the cause, that he has a definable interest in favoring one party more than the other. These circumstances have caused a long felt anxiety, productive of many attempts to fix some simple general rule, that might be applied as a universal test, to the multiform questions of this sort, which continually are presenting themselves. Such a general rule, which for its reasonableness, brevity and apparent simplicity, has commended itself to the memory and confidence of the profession, seemed to be laid down by that distinguished jurist, Mr. Justice Buller, in *Bent v. Baker*, 3 *T. R.* 27; which is, that the competency of a witness is to be tested by this enquiry, " *Is he to gain or lose by the event of the suit?*" Experience, however, teaches, in respect to this, as to many other rules intended to simplify the process of human reasoning, that it is much easier to invent an axiom than to agree on its application to particular cases. And when we are called to examine the numerous decisions that have been made, as well since as before the promulgation of this rule, and are compelled to see that many of them are hardly reconcileable, and some of them are plainly in collision with others, and this, notwithstanding

that the tribunals by which they are made all recognize and intend to uphold the same rule, we are forced to doubt whether this branch of the science of evidence has derived any aids from the great minds that have labored to simplify it, and whether, with all the general rules and particular decisions that fill the books, we are advanced one inch beyond the original proposition, that " an interested witness is incompetent to testify."

These reflections are suggested by the unexpected difficulties I have encountered in the investigation of this case, and in my attempts to find some direct, plain, uncontradicted decision that would settle the question, whether *Kingsbury* is or is not a competent witness for the respondent in this suit. The facts to show his relation to the parties, and the purpose and bearing of his testimony upon them, are few and simple ; but the effect of his testimony upon himself is more intricate and disputable. These facts are, that the complainants, who were merchants at Marblehead, in Massachusetts, having had commercial dealings with the defendant and his partner, now deceased, merchants in New-York, file their bill against the defendant, as surviving partner, to compel him to account for a large balance claimed to be due them. The defendant, in his answer, as one ground of defence, sets forth an indebtedness from Kingsbury, the witness, and alleges that the complainants were partners with Kingsbury, and jointly liable for his indebtedness. To establish this fact he calls upon Kingsbury, who testifies to his indebtedness to the defendant, to the joint liability of the complainants with him, to their insolvency, and to their large indebtedness to himself. The question is presented, has not Kingsbury such an interest in the event of the suit as disqualifies him from testifying ? That he was interested in some of the matters to which his testimony related cannot be disputed, but it is denied that he had any interest in lessening or defeating the recovery by the complainants ; on the contrary, as he claimed to be their partner, and therefore could call on them for a share of whatever they recovered, it was his interest to make their recovery as large as possible ; and even admitting that he had an interest in establishing a partnership between himself and the complainants, so as to

make them assist in paying a debt, which he confessedly owed to the defendant, yet this at most only balanced the interest which he had, to increase the recovery by the complainants, a share of which would belong to him, as their partner. This is the substance of the reasoning furnished by the chancellor, in support of his decree; and it is objected that the witness was not called by the defendant, to prove his partnership with the complainants, in their direct dealings with the defendant, or how, in this respect, the accounts between them stood, but simply to charge the complainants with a joint liability to the defendant, for a large and acknowledged indebtedness contracted in his own name. In other words, the witness, admitting his own indebtedness, is called to make the complainants, by his own testimony alone, pay the whole or the half of it.

The principle that a witness is competent, though he has an interest in the subject matter of controversy, if it is equipoised by some other interest, so that he will lose or gain equally, let the event of the suit be what it may, is perfectly familiar; but the application of it is often perplexing and difficult, and the decisions under it are far from being harmonious and consistent. It is not surprizing that they are not, for the faculties of the human mind are not so uniform in their operations that we should expect always to see wise and honest men drawing the same inferences from the same facts. To ascertain with certainty that the conflicting interests of a witness are exactly equiponderant, is in some cases a matter of extreme nicety, requiring the most laborious efforts of the clearest intellect, while the conclusion that a witness' interest is necessarily balanced, because there are motives in both scales, is one easy to be reached by an unfatiguing process of reasoning. This is to cut, and not to untie the gordian not. When the slightest preponderance can be discovered between two conflicting interests, this difference is to be considered an absolute interest, not countervailed; for unless we regard the slightest excess to be as much a real interest as if that excess had been the only subject in dispute, we shall find it difficult, by legal reasoning, to stop short of the conclusion that the

ALBANY,
Dec. 1835.

Gregory
v.
Dodge.

slightest possible interest in the one scale will suffice to counterbalance the greatest possible interest in the other. I think it is the convenience of considering conflicting interests as necessarily counterbalanced, which, by little and little, has led some courts to the broad conclusion to be found in some of the decisions which I propose now to notice.

The first case which I find, where the question was distinctly raised, whether a plaintiff could call his debtor to prove that the defendant in the suit was also liable, as well as himself for the debt, is that of *Lockhart* v. *Graham*, *Strange*, 35. From the short note made of the case it appears that it was an action against one of three joint and several obligors, and one of the other obligors was admitted, to prove the execution of the bond by the defendant. The case is very bald, and the conclusion of the court is all that is given. Resting on this case, there comes, after a long interval, that of *Blackett* v. *Weir*, 5 *Barn. & Cress.* 385, where a witness was allowed to prove the defendant jointly liable with himself. In this case the liability of the witness appeared only by his own testimony on *voir dire*, and *Littledale*, J. seemed to regard this as an important circumstance. But in the next case, in the king's bench, *Hall* v. *Curson*, 9 *Barn. & Cress. Abbott*, Ch. J., decided this circumstance to be unimportant, and reiterated the decision on the broad ground that the interest of the witness was counterbalanced. In addition to these authorities, the respondent's counsel has cited 2 *Starkie's Ev.* 302, which will be found, however, to rest wholly on the marginal note of the report of *Ridley* v. *Taylor*, 13 *East*, 176. This note is not sustained by the case, which involves no question of the competency of witnesses. On the other side of this proposition the cases are more numerous, and in courts equally respectable. *State* v. *Penman*, 2 *Desaus.* 4 *and* 5. The court of South Carolina decided that a partner in a company was not an admissible witness to prove that another person is a member; especially where there are written articles. About the same time Lord Ellenborough decided at *nisi prius*, 3 *Campb.* 317, that a person purchasing goods in his own name is not a competent witness to prove that he purchased them as agent for the defendant. *Brown* v. *Brown*, 4 *Taunt.* 752, the decis-

ion was, that in an action upon a joint contract against two, one of them who had suffered judgment by default was incompetent to prove that the other was jointly liable with him, because he would, by his own testimony, obtain contribution from the other on a debt for which it was already established that he was liable. In a case in our supreme court, *Marquand* v. *Webb*, 16 *Johns. R.* 89, decided it would seem, without knowledge of the two cases last cited, it was ruled that a person confessedly liable for a debt is incompetent to prove that the defendant is also liable with him. Spencer, J. in giving the opinion of the court says, that though he has not met with a case directly to the point, he was clear, on principle, that the witness had an interest in multiplying his co-debtors, and thus diminishing his own responsibility; and that where a witness will derive a certain advantage from establishing the fact in the way proposed, he cannot be heard, whether the benefit be great or small. The decision in *Shiras* v. *Morris*, 8 *Cowen*, 60, is analogous to Lord Ellenborough's, 3 *Campb.* 317, and distinctly corroborative of it. In *Ripley* v. *Thompson*, 12 *Moore*, 55, a witness was called to prove that the defendants were jointly liable with him for a debt which he had contracted, and was rejected as incompetent: Chief Justice Best observing, "If he were allowed to prove that others were liable jointly with him, he would exonerate himself from paying three fourths of the debt, and throw the burthen on the defendants." There are several other cases having some bearing on the question, which I have examined, but as their relation to it is not as direct as those above cited, I shall content myself with merely referring to them by their titles. They are, *Beit* v. *Hood*, 1 *Esp. R.* 20; *Young* v. *Bairner, id.* 103; *Evans* v. *Yeathead*, 2 *Bing.* 133; *Hall* v. *Cecil*, 6 *Bing.* 181; *Hudson* v. *Robinson*, 4 *Maule & Selw.* 475; *Cossham* v. *Goldney*, 2 *Stark.* 365; *Simons* v. *Smith*, 2 *Ry. & Moody*, 29; *Fawcett* v. *Wrathall*, 2 *Carr. & Payne*, 305; *Black* v. *Goodman*, 1 *Bailey*, *S. C. R.* 201; *Gay* v. *Cary*, 9 *Cowen*, 44. If, then, authority is appealed to, for settling the question in the present case, we find decisions both ways, and though there is a decided preponderance against the admissibility of the witness, yet those on the other side are entitled to

great respect ; and if, on examination, are found best stained by principle, they will afford sufficient warrant for deciding this case in accordance with them.

But after mature reflection, the more carefully exerted because of a first impression the other way, I am persuaded that the principle of those decisions, at least as it is illustrated by the facts of this case, is erroneous ; at any rate, that the witness, Kingsbury, under the circumstances in which he was offered, was not a competent witness for the defendant, to charge the complainants with an indebtedness for which *prima facie* he alone was liable. It is not denied that this was the direct effect of his testimony, nor but that to this particular point he had a certain interest ; but this interest, it is said, was counterpoised by the fact that being a partner with the complainants, he could compel them to contribute, in case he should first pay the debt, and therefore it was indifferent to him whether they helped him pay it in the first instance, or repaid their share of it to him after he had paid the whole of it. The fallacy of this argument consists in assuming the very fact in dispute, that the witness was in truth the partner of the complainants, and they liable to pay debts contracted in his name. This is the precise position which the witness is called to establish, and which he has an interest in establishing, though it be contrary to the truth. That it must be so appears from this, that the moment it is admitted he is a partner with the complainants it becomes unnecessary for the defendant to call him ; for the fact of the joint liability of the complainants being already established, the conclusion for which the defendant contends follows of course. If it may be assumed that witnesses will swear to no more than the truth, though they may benefit themselves by doing so, and we are to take what they do swear to as evidence that they have no interest in swearing to it, the whole doctrine of the disqualification of witnesses is exploded. I take the true principle to be, that if the case shows, without the witness' testimony, that he has an interest in the event, he shall not be admitted to swear to a different state of facts, which, when established, make him an indifferent witness ; and for this plain reason, that there is the same probability he will swear that

he is indifferent, when he is not, as that he will swear false-
ly to any other proposition involved in the cause. *The King*
v. *Prosser*, 4 *T. R.* 578 : Buller, J. observes, " the question
whether evidence is admissible or not, depends on the sub-
ject to which it applies." Now what is the subject matter to
which Kingsbury's testimony applies? Is it the transfer of
the payment of a debt due ostensibly by himself alone to
others, so that they shall immediately pay the whole of it, and
ultimately, perhaps, he repay half of it back to them? At
first view, certainly, this is as direct an object as can be ima-
gined. But it is said that the judgment in this suit will not be
conclusive between the witness and the complainants ; and
that if he makes them pay wrongfully his own debt, they may
recover it back of him. Admitting this to the fullest extent,
what does it amount to? Nothing more than is true in the
case of every interested witness. If the liability to a con-
viction for perjury, to which every witness testifying falsely
is exposed, is not deemed a sufficient security, where a wit-
ness has an interest so to testify falsely, why should a civil
suit for the recovery of the money he has sworn into his own
pocket be so regarded, and especially in a case like the pre-
sent, where it would be more difficult for the complainants, if
wronged, to establish the fact, in an action for the recovery
of the money back, than in a criminal prosecution for perjury?

I put this case on the broad ground presented by Chief
Justice Best, in *Ripley* v. *Thompson*, 12 *Moore*, 55 ; but
there is a strong distinguishing fact disclosed, which is, that
the complainants are indebted to the witness, and are in-
solvent. But the chancellor says, " The fact that they were
insolvent did not alter the nature of his interest ; because,
if he had obtained a decree against the defendant, he could,
by filing a bill to settle the copartnership accounts, have
prevented them from receiving the money until the whole
copartnership debts, including any balance which might
be due to him from his copartners, were settled or pro-
vided for." I confess I do not understand the force of
of this remark, for I cannot see how the witness, who ac-
knowledges himself indebted to the defendant, is to ob-
tain a decree against him, and especially when he is not
impleaded as a party in any suit with him. Besides, there

ALBANY,
Dec. 1835.

Gregory
v.
Dodge.

must be a great difference, whether a person pays a debt which he owes, by offsetting a debt due to him from a foreign insolvent, or pays the debt from his own pocket and resorts to the insolvent for an equivalent. In *Buckland* v. *Tankard*, 5 *T. R.* 578, it was held that a witness was incompetent, because, in one event it would be more difficult to recover the same sum of money than in another. Though the principle of this case, in its fullest extent, is questioned, there is, I think, no reason for questioning it to the extent of the decision in *Markland* v. *Jefferson*, 2 *Pick.* 240, where it was ruled, that if the effect of the testimony is to put money into the witness' hands which he can retain for a debt due to him from an insolvent, he is incompetent. This principle alone decides the inadmissibility of the witness.

Another question remains for examination—which is, whether the objection to the witness was made at such time and in such manner, that the party could afterwards avail himself of it. This depends essentially on the effect of the 85th rule of the court of chancery, and its application to this case. Except for this rule, there can be no reasonable doubt that the objection was sufficient in time and mode. In *Swift* v. *Dean*, 6 *Johns. R.* 538, which was in this court, Justice Thompson held that the rule is equally settled in equity as at law that if a witness, at any stage of his examination, discovers himself to be interested, he is to be rejected and his testimony entirely set aside. This principle, I believe, has never been disputed ; and it would be decisive in this case, if the examination of Kingsbury had been completed as well as commenced before the adoption of the new rules. That took place in January, 1830, and the examination of the witness commenced on the 10th of December preceding, before one examiner, and was resumed and completed in April following before another. It is not necessary, I think, to inquire as to the propriety of applying the rule to an examination already commenced ; for it strikes me that the note made by the second examiner, when the examination was resumed before him, is enough, under the circumstances of the case, to make out a compliance with the spirit of the rule. This rule, after declaring that no objection to the competency of a witness

shall be made at the hearing, unless such objection was made before his testimony was closed, proceeds to direct the course the examiner shall adopt in case the witness is objected to; which amounts only to this : that he shall note the objection and proceed with the testimony, if insisted on by the party offering it, notwithstanding the examiner shall be satisfied that the witness is incompetent. " The object," says the chancellor, " of requiring the objection to the competency of a witness to be made before his testimony is closed, is to enable the party calling him to obviate the objection by a release, or if that cannot be done, by substantiating the same facts by other witnesses." The real purpose of the rule, then, being to give seasonable notice, we have only to be satisfied that such notice was either given to the party or waived by him. The note of the second examiner is as follows : " This examination is continued before me by the consent of the counsel of both parties, the complainant's counsel reserving every objection to the competency of the witness, and all other legal exceptions." Now, though this note does not show expressly a literal compliance with the requirement of the rule, it seems to me that such a compliance can be fairly inferred from it. The examiner, in the presence of the adverse counsel, reserves for the complainant's counsel " every objection to the competency of the witness." This he could not properly do, unless the objection had been stated, or the statement of it waived by the opposite counsel ; and as it is fair to presume that the examiner both knew his duty and did it, it is also fair to infer that one or the other fact occurred, and therefore that the defendants' counsel had sufficient notice to warn him to sustain or supply the testimony of the witness. I throw out of view the probability that he could do neither, and confine my conclusion to the apparent presumption that he must have understood the ground on which the competency of the witness could be impeached. I shall vote for reversing the chancellor's decree.

By Senator Edwards. To determine whether the testimony of Kingsbury was properly excluded, it is necessary to inquire whether his competency as a witness was duly objected to; for

ALBANY,
Dec. 1835.

Gregory
v.
Dodge.

if his competency was not duly objected to, his deposition should not have been suppressed. His examination was closed without the exception being made which the counsel for the complainants had reserved to himself the right to make. Had the counsel intended that the right to except should continue until the hearing upon the pleadings and proofs, he should so have expressed himself. He did not do so ; and it appears to me that the power to exercise the right should not be considered as existing beyond the time within which the objection to the witness might legally be made—neither under the first or second reservation made by the counsel for the complainants. The next inquiry then is, at what time could the objection to the competency of the witness be legally made ? The chancellor, under the Revised Statutes, 2 R. S. 175, has established a rule regulating the practice in this particular, which expressly prohibits any objection to the competency of a witness from being made at the hearing of a cause, which was not made before the examination was closed. The reason of the rule is obvious : it is to afford the opposite party an opportunity to release the interest of the witness and restore his competency, or, if that cannot be done, to supply the testimony rejected, by other testimony which he may have it in his power to obtain. If the practice contended for by the appellants' counsel prevails, the party in whose favor the testimony was taken is deprived of the opportunity to supply the testimony rejected, by other testimony, though he may have it fully in his power to do so. Since the rule of the court of chancery above referred to has been established, requiring the objection to be made as to the competency of a witness before the examination is closed, the practice has been uniform, and recognized by repeated decisions. The Mohawk Bank v. Atwater, 2 Paige's Ch. R. 60. Rogers v. Dibble, 3 id. 241. Town v. Needham, id. 552. The excepting to the competency of a witness in the court of chancery, on the ground of interest, is analogous to the practice of the courts of common law, by which the party is permitted to make his objection at any time when the witness appears to be interested in the course of his examination. 1 T. R. 717. Caton v. Lenoxar, 5 Randolph's R. 44, 69, Peake's Ev. 195. Talman v.

*Dutcher,* 7 *Wendell,* 181. Testimony not objected to is considered as received by consent, and in such case there would be nothing to ground a motion upon, to support it at the hearing. *Jackson* v. *Cady,* 9 *Cowen's R.* 150; 5 *id.* 123, 173. It is true the examination of the witness was commenced before the adoption of the 85th rule of the court of chancery, to which I have alluded; but it was not closed until the 5th of April after, which afforded the party a sufficient opportunity to have complied with it, for he had a right to take the exception at any time before the examination was closed; and having the right, and not having availed himself of the benefit of it, he ought not to have prevailed on his motion to suppress the testimony of Kingsbury, or to have obtained a decretal order excluding his testimony on the reference to the master.

If the objection to the competency of Kingsbury as a witness had been made in due time, I cannot readily perceive how the appellants' objection to his competency on the ground of interest could have prevailed; for it appears to me, if he was interested at all, he was interested to sustain the appellants. If he was a copartner, and they had recovered, he would have been entitled to a portion of the amount recovered; but I forbear to enter into an examination of that part of the case, as I am for affirming the decree of the chancellor, on the ground that the appellants were too late to make their objection on the hearing of the cause, not having excepted before the examination was closed.

By Senator MAISON. It appears to me not to be a matter of such moment, to decide whether Kingsbury was an interested witness or not. Conceding, for all the purposes of this cause, that he was a deeply interested witness, yet I know of no rule which will exclude his testimony, unless he be objected to at or before the closing the proofs in the cause. Fair practice and common justice require the objection to be made before closing the proofs, that the opposite party may have an opportunity to establish by other witnesses what he has proved by him. If a party will not object, he admits the competency of the witness. To allow of a different rule would lead

to great injustice. It is a trite, but nevertheless a very equitable saying, if a party will not speak when he ought to, he shall not be heard when he wants to speak. If no objection be made, the party is well justified in supposing that it is not intended to be made, and resting upon such supposition, to produce no further testimony, To allow the objection to be made for the first time at the hearing, would be taking the party by surprise, and at a time when it is out of his power, according to the practice of the court, to have any further examination of witnesses. If it be intended to object to a witness on the ground of incompetency, the objection must be clearly and distinctly made, in decisive and unequivocal terms; there must be no room for doubt that the objection is made, and meant to be insisted upon. The party in this case made no objection to the witness before the examiner; he merely announced that he reserved the right to object to the witness' competency. He did not make it then, but reserved the right to make it at some future day. This he had a right to do; for peradventure, upon the closing of the proofs, it might appear that the testimony of the witness would not influence the decision of the cause one way or the other. If, however, the party supposed the testimony to be material, he was bound, before the closing of the proofs, to make the objection distinctly. He has no right to reserve his objection beyond that time; if he had, he would have a right to reserve it until he came to this court, and here for the first time make it. Such a proceeding is not to be tolerated.

On the question being put, *Shall this decree be reserved?* the members of the court voted as follows:

*In the affirmative*—Senators TRACY, LACY, LANSING and KEMBLE—4.

*In the negative*—The PRESIDENT of the Senate, *Chief Justice* SAVAGE, Mr. *Justice* NELSON ; *Senators* ARMSTRONG, BEARDSLEY, CROPSEY, DOWNING, EDWARDS, FISK, GANSEVOORT, HALSEY, LOOMIS, MAC DONALD, MACK, MAISON, VAN SCHAICK, and WILLES—17.

The following resolutions were adopted :

*Resolved,* That Kingsbury was a competent witness. On the question of the adoption of which resolution, the members of the court voted as follows :

*In the affirmative*—The PRESIDENT of the Senate, *Chief Justice* SAVAGE, Mr. *Justice* NELSON, and *Senators* ARMSSTRONG, BEARDSLEY, CROPSEY, DOWNING, FISK, GANSEVOORT, HALSEY, LOOMIS, MAC DONALD, MAISON, WILLES—14.

*In the negative*—*Senators* TRACY, LACY, LANSING, KEMBLE, MACK, VAN SCHAICK—6.

*Resolved,* That the objection to the competency of the witness ought to have been made before the closing of the proofs. On the question of the adoption of which resolution, *fourteen* members of the court voted *in the affirmative.*

Whereupon the decree of the chancellor was AFFIRMED.