## COLLINS *vs.* ELLIS.

A person *prima facie* liable for the payment of a debt is *not* a competent witness to sustain a suit in which the debt or a part of it is sought to be charged upon a *third person,* or upon a *fund* in his hands; and *it was accordingly held* that in an action by a *workman* or *material-man,* under the acts giving a *lien* to mechanics and others for work done or materials furnished in the erection of buildings in the city of New York, against the *owner* of such buildings, the *contractor* to whom credit was originally given is *not* a competent witness for the plaintiff.

ERROR from the New York common pleas. Ellis sued Collins under the act for the better security of mechanics and others erecting buildings in the city of New York, commonly called the *lien law,* and the act amending the same.

See Statutes. sess. of 1830, p. 412, and sess. of 1832, p. 181. Collins had entered into a contract with one John G. Young, whereby the latter engaged to do the carpenter work *according to a specified plan* of four houses then erecting by Collins in the city of New York, for which he was to receive $3800 in certain specified instalments as the work progressed. Before the job was completed, Young abandoned the work, leaving an instalment of $1000 unpaid. *Ellis*, the plaintiff below, having furnished Young, the *contractor*, with a quantity of *plank* used in the erection of the buildings, for which he claimed the sum of $256 as due to him, gave *notice* of such claim to *Collins*, the owner of the buildings, and demanded payment of the same. The *notice of claim* was accompanied by an *account*, drawn up by Ellis, charging Young as debtor, specifying the quantity of plank and the value thereof, and two *affidavits :* one of *Ellis* himself, declaring the account to be just and true, and stating the amount due to him to be $256; the other was made by a third person, who merely swore to the value of the plank. On the production of these papers on the trial, the defendant objected to their sufficiency, insisting that the statute required an *attested* account of the materials furnished and the value thereof, and that the papers produced did not amount to a compliance with the requirements of the statute. The objection was overruled. The plaintiff then called Young, the *contractor*, to prove a balance due to him from the defendant for work done on the buildings, over and above the payments received by him. He was objected to as not a competent witness, but the objection was overruled; and he then testified that the defendant was indebted to him over and above the payments received in the sum of $232, for *extra work* upon the buildings, and that what remained to be done under the contract when he abandoned the job, would not cost a sum equal to the last instalment which remained unpaid. On the other hand, evidence was given tending to show that the cost of completing the job would greatly exceed the $1000 and the sum claimed for *extra work*. The jury found a verdict for the plaintiff for the

whole sum claimed. The defendant having excepted to the decisions of the court, sued out a writ of error.

*W. Mulock*, for the plaintiff in error.

*H. Brewster*, for the defendant in error.

*By the Court,* COWEN, J. There is no foundation for objecting to the account, as not properly attested. This attestation was of course not evidence upon the trial. The object of the act, in requiring it, was to prevent the introduction of captious and unfounded claims against those who employ building contractors. It intended, therefore, that the plaintiff should sustain it by his own oath, as proof preliminary to the bringing of an action, like the proof of loss which is often required of the assured by policies of insurance. The section in question speaks of an *attested account* merely, without saying by whom. The attestation furnished was, therefore, a literal compliance with the terms, and I think, for the reason given, it was also in conformity with the intent of the act. I agree that it would have been otherwise, had the act contemplated the attestation being used as evidence of the truth of the account, upon the trial.

The question whether Young was a competent witness for the plaintiff, depends on the legal effect which a recovery in a suit of this kind will have upon the rights of the original debtor. The plaintiff had given credit to him; and at common law, he alone was liable; but the statute allows the creditor on serving an attested notice, to pass him by, and recover of another, if that other be indebted to him, in respect to the building, on which the plaintiff's labor has been bestowed. So far, Young was most clearly interested to make out a fund in the hands of the defendant below. It was to perform the important function of paying the witness' own debt. The defendant was called into court as being a debtor in respect to the fund; and a recovery by the plaintiff, with satisfaction, would work an extinguishment of the debt. Admitting the witness to be only *prima facie* liable for a debt, it has been often held that he is not competent

to sustain a suit which seeks to charge that debt upon another: as if he had been an agent for the defendant to contract the debt for him, but had contracted in his own name, or without disclosing the name of his principal. *M'Brain* v. *Fortune*, 3 Camp. 317. Lord Ellenborough said, in that case, that the verdict which he was called to sustain would be evidence for him, if the plaintiff for whom he was called should afterwards sue him as being *prima facie* liable. *Shiras* v. *Morris*, 8 Cowen, 60, is direct to the same point. The former case was approved by the judges of the common pleas in *Ripley* v. *Thompson*, 12 Moore, 55. In the latter case, the witness who had given his note to the plaintiff for the debt, was called to charge the defendant as his partner, but was rejected, because a recovery would relieve him from one half the debt. In *Brown* v. *Brown*, 4 Taunt. 752, also cited and approved in *Ripley* v. *Thompson*, by Gazelee, J. at p. 58 of 12 Moore, the court came to the same conclusion. There one who had suffered judgment by default in an action on a joint contract, was offered as a witness against the other, but excluded on the ground that the witness would obtain by his own testimony contribution against the other. The precise point decided in *M'Brain* v. *Fortune* was decided in the same way by the district court for the city and county of Philadelphia in *Hickling* v. *Fitch*, 1 Miles, 208. There are many cases agreeing with the principle of *Ripley* v. *Thompson*, indeed deciding the very point, and some in this court. *Marquand* v. *Webb*, 16 Johns. R. 89, is one. There are a class of cases which conflict with this principle, or rather its application in the two cases just mentioned, on the notion that the witness would be liable over; and so a *balance of interest* created. Mr. Justice Nelson mentions two cases of this class in *Gregory* v. *Dodge*, 14 Wend. 603. They are *Cossham* v. *Goldney*, 2 Stark. Cas. 414, and *Blackett* v. *Weir*, 5 Barn. & Cress. 385. *Hudson* v. *Robinson*, 4 Maule & Selw. 475, was a third. Mr. Justice Nelson does not appear to be at all satisfied with the reason on which these cases proceeded.

I have always thought the better reason with us to be, that a recovery, one way or the other, would discharge the witness, both at law and in equity, *Robertson* v. *Smith*, 18 Johns. R. 459, *Penny* v. *Martin*, 4 Johns. Ch. R. 567, which would throw his technical interest against the party calling him; for, by defeating the plaintiff's action, the witness would escape both present contribution and all future liability. That might be worthy of consideration, should the particular class of cases to which *Marquand* v. *Webb* belong come to be reviewed. But it does not touch the question immediately before us, because a recovery by the defendant could have no such operation, except where the witness is a *joint debtor* with the defendant. So far as this court has acted, we have direct authority for saying, that where the plaintiff calls a witness who is liable, or *prima facie* liable to the plaintiff for the debt in question, with a view to throw even part of that debt, and *a fortiori* the whole of it off himself, and on to another, the witness is incompetent. In such case, I do not know that the verdict, being admissible as evidence for or against the witness is essential. The result of the proceeding is a payment of his own debt, in part or in whole. Suppose an officer, having levied on a debtor's property, to be sued in trover for it by a stranger, and the debtor to be called for the officer; he would be clearly incompetent. Spencer, J., in *Marquand* v. *Webb*, 16 Johns. R. 93, 94. The record would in such case, perhaps be evidence of an eviction, if the plaintiff recovered; but the prominent reason is, that by the witness' own oath, he may swear a fund out of the stranger, which has been levied on to pay the witness' debt. He therefore has a direct interest. In the case at bar, Young was called to create a fund for his own benefit. The defendant below denied its existence. Suppose Young's debts had been assigned under the insolvent act, and his assignees had sued the defendant below for the $232, I need not cite cases to show that he could not be a witness without his interest being first released. In cases of this kind, we must look at the nature of the question, the point really at issue; not merely to the technical form of the record, nor whether

it will be evidence to affect the witness hereafter; though I think I shall be able to show that it would in one view affect Young most seriously. The question is broader : is he to be directly benefitted by the event of the suit. In the case at bar, he stood in the position of a plaintiff against Collins, who was warmly contesting the debt. Young had abandoned his contract, had forfeited the last instalment; and how much farther he had injured Collins, was the question submitted to the jury on his testimony. It is right in every sense, therefore, to say that the witness was the author of the fund which was to pay his debt. In *Hayes* v. *Grier*, 4 Binney, 80, the county treasurer had sued one to whom he alleged Bond had paid money to be paid over to him, the treasurer; and Bond was held incompetent as a witness for the plaintiff. Tilghman, Ch. J. and Yeates, J. both said the record would be evidence for Bond, to prove that the treasurer had recovered the money. Mr Mulock cited my Treatise, 593, on the argument, where I have given the substance of this case in a familiar way, and assigned the same reason. Whether that be the true reason or not, we see that the result would probably have been a satisfaction of the debt, and a consequent discharge of the principal debtor called as a witness to promote that discharge. This argument has thus often been applied, as we have seen, in actions on contracts, though I admit it has been as often repudiated in actions for wrongs. There, the joint wrongdoer not sued is held competent as a witness for either party, though his testimony goes in the result, when he is called for the plaintiff, entirely to discharge him. I say in the result, because, with us, he is not discharged till the plaintiff either obtains actual satisfaction, or, at least, by taking out execution, has elected *de melioribus damnis. Livingston* v. *Bishop*, 1 Johns. R. 290. In England, the simple recovery by the plaintiff bars all action forever against the witness. Yet, says Abbott, Ch. J. in *Blackett* v. *Weir*, before cited, " Scarcely a circuit passes without an instance of a person who has committed a trespass, being called to prove that he did it by the command of the defendant." He admits the objection to be much stronger than that on which *Mar-*

*quand* v. *Webb* and its kindred cases shut out the witness; and *Blackett* v. *Weir* was, as we have noticed, in direct conflict with those cases. The principle is as strong against the competency of the witness, in the cases mentioned by Abbott, Ch. J., for aught I can see, as in *McBrain* v. *Fortune*, or *Ripley* v. *Thompson*. The only difference is, that one class are cases of *tort* and the other of *contract*. Yet no one can deny, that on the same principle, in the different cases, courts have uniformly come to antagonist results. I must be pardoned for supposing that the learned chancellor, in *Benedict* v. *Hecox*, 18 Wendell, 493, fails to make the two classes of cases consistent, by an attempt to show a stronger reason for exclusion in the case of contracts than of torts. Yet I agree, and have endeavored to show, that the authorities are quite uniform, both in England and in this country, that where the witness stands as a sole debtor for the whole debt, he cannot be received to charge it on another man, or on a fund in the hands of that man which his testimony goes to create, unless there be some countervailing interest upon which we can say *stat indifferenter.* See per Spencer, J. in *Marquand* v. *Webb*, 16 Johns. R. 94, 95. The following cases will also be found to sustain the same view: *Sheldon* v. *Ackley*, 4 Day, 458; *Rotheroe* v. *Elton*, Peake's N. P. Cas. 84; *The State* v. *Edwards*, 4 Dessaus. Eq. R. 1, 4, 5; *Emerton* v. *Andrews*, 4 Mass. R. 653, (though Spencer, J. in *Marquand* v. *Webb*, thought the interest of the witness in the last case was balanced;) *Purviance* v. *Dryden*, 3 Serg. & Rawle, 402; *Miller* v. *M'-Clenachan*, 1 Yeates, 144; *Miller* v. *Hale*, Dudley, 119; *Whatley* v. *Johnson*, 1 Stew. 498; *Doebler* v. *Snavely*, 5 Watts, 225.

I have found no cases, *in respect to contracts*, which are the other way, except two at nisi prius: one in England and one in Ohio. *Rowcroft* v. *Basset*, Peake's Add. Cas. 199, and *Nicholson* v. *May*, 1 Wright, 660. I will not deny that there may be others, for I am prepared for almost any judicial discrepancy upon the principle which governs this class of cases, after what I have read as the solemn adverse conclusions from it, by the courts of Westminster Hall. I do not know that we ought to be surprised at such things

on many questions which respect the competency of witnesses; for, I imagine, it would be easy to show that the cases in this branch of our jurisprudence are more difficult of reduction to scientific arrangement, than those in any other department of the law. I am confident, however, that we are bound by at least a decided balance of direct authority to deny the competency of a witness called to fix his own debt upon another.

But it was said that Young had an adequate counterbalancing interest on the other side. I admit, that where a witness is suspended between equally opposing forces, he is competent ; and it must now be admitted, perhaps since *Benedict* v. *Hecox,* in the court of errors, 18 Wendell, 490, the case mainly relied on for the defendant in error, that if Young had, in the event of this suit failing, a perfect remedy over against Collins, the defendant below, unaffected by a recovery either way, he was a competent witness. And see the *note* in that case referring to *Gregory* v. *Dodge,* 14 Wendell, 593. This case, and I admit that it stands well supported by authority, though I shall not stop to go into the books, opens another door for reversing hundreds of decisions. Indeed I think special bail might be received under it, as a witness for his principal ; certainly any other surety in behalf of his principal. In the case relied on, the action was by *Hecox,* a surety, against the alleged principals in a promissory note, for whom he had signed the note and paid the money ; and to establish his demand by showing that the defendants were principals, he called another, one *Foster,* who had also signed the note with him as surety. Foster was held competent, although his testimony went to exonerate himself by fixing the debt on others, because he clearly had a remedy over against the principals, for whatever he stood liable as surety to pay by way of contribution to Hecox. If the party who called him succeeded, the witness was relieved ; if he failed, the witness would be charged, but could come against those persons whom he was seeking to fix, for all that he would lose. This was holden to make him indifferent. If he lost any thing, it must be by the failure of his indemnitors, an event which was re-

garded as too remote and contingent to work a technical influence. I refer to the argument of Chief Justice Nelson, while the case was in this court, 18 Wendell, 491, 2, and Senator Paige, at id. 504, 5, in the court of errors, and the cases cited by him, to show the view taken by the two courts respectively as to the opposite influences which were held to affect the witness. The case is a decision simply, that where the witness has a safe remedy over for what he may lose by an event adverse to himself, of the suit in which he is called, this consideration renders him competent. If we look at the mere solvency of the man against whom the remedy is supposed to lie in the case at bar, it is so far within the doctrine of *Benedict* v. *Hecox*. If the plaintiff below had failed, the defendant was able to pay the disputed money to Young.

There is, I think, however, one remarkable feature in this case, which did not exist in *Benedict* v. *Hecox*. Here it was essential for the plaintiff below to show that there was a debt due from the defendant to the witness, Young, upon which the plaintiff's notice had attached ; and, in virtue of the statute, worked an appropriation of the particular debt to the plaintiff. I think the event of the suit was the same in legal effect, to the witness, as if he had himself, in writing, assigned the debt to the plaintiff, and warranted its collection ; or, if you please, the same as if it had passed by assignment under the insolvent act to the witness' assignees. In such case a privity arises, and it shall not be allowed, that those who have thus acquired the interest, and brought their action and been defeated on the merits, may re-assign an unimpaired claim, to the person from whom they received a transfer of it. An adverse event of a suit brought by a trustee or assignee, binds the *cestui que trust*, or assignor. There is a privity between them. The formal right of the plaintiff below was clear ; he made out the assignment to him by evidence entirely independent of Young's testimony. Then, as standing legally in the place of Young, he proceeded to try the question whether the debt which he claimed had any existence. To show this was essential, *Haswell* v. *Goodchild*, 12 Wendell, 373 ; and was admitted to be so up-

on the trial; and Young, with all his ultimate responsibility resting upon him, was made a witness to that point. Suppose the action to have failed on this trial upon the very point, is it to be tolerated that Young may himself sue, and try the question again? Is not his remedy forever gone in respect to the fund in question? Clearly it is, unless he shall be enabled to show that the action was brought and tried collusively, in order to defraud him, or went off upon some point not connected with the merits. Nothing of that kind can be pretended in the present case. If the action had failed upon the preliminary proofs, it might have been renewed. But the debt was as effectually transferred as if it had stood in the form of a note or bill of exchange, and had been endorsed to the plaintiff below by Young; at least, after a trial on the merits, he would have been as completely cut off by the event, as he would by the trial of a suit upon a debt regularly assigned and guarantied by him. The record would, therefore, be evidence against him. The debt would not, like an endorsed note, revert to him in his original capacity, on his paying the holder, in this case the mechanic. It would come loaded with the legal bar created while in the hands of the assignee. The answer to Young's action would be, that the suit by the plaintiff below, which failed, and the one brought by him, were substantially between the same parties; or, at least, that he could claim only as a *privy* of the plaintiff below. These views will be found supported by the following cases: *Rogers* v. *Haines*, 3 Greenl. R. 362, 366; *Calhoun's lessee* v. *Dunning*, 4 Dall. 120; *Hutchins* v. *Fitch*, 4 Johns. R. 222; *M'Donald* v. *Rainor*, 8 id. 442. An assignee of a chose in action has often been considered the real party by this court; *a fortiori* is he so, where the debt is transferred by law, and he empowered to sue for it in his own name; Shall the one for whose benefit he sues, escape the same consequence; More especially is a party in interest though not even named upon the record, concluded, if he have notice, and be present, as Young was, and participate in the prosecution of the suit. *Walker* v. *Ferren*, 4 Verm. R. 523, 529, 530. The fact of his being a witness on the trial, shows

that Young had notice. Per Savage, Ch. J. in *Brewster* v. *Countryman*, 12 Wendell, 450.

To allow a claim first to be litigated by the assignee, with the benefit of his assignor's testimony, and on failure, the debtor to be harrassed by, another suit concerning the same matter, would be unreasonable, not to say oppressive.

Thus, that the record would be evidence against Young, on a recovery adverse to the plaintiff below, seems to be quite clear. He was interested to avoid that consequence.

The judgment of the court below must, therefore, be reversed ; *venire de novo* will issue from the court below ; the costs to abide the event.