NEASS *vs.* MERCER.

The plaintiff and R. indorsed a note for the accommodation of L., the maker.
L. loaned it to the defendant, for his accommodation, upon his promise to
pay it at maturity and save the indorsers harmless; and the defendant ne-
gotiated it to a bank, for his own use, and the bank sued the plaintiff
thereon and recovered a judgment for the amount, which the plaintiff was
compelled to pay. *Held,* that the note had no inception as a valid security,
until it was passed to the bank; that the sole consideration for it being
received by the defendant, the debt created by the negotiation of the note
was his debt, and both L. and the indorsers were sureties for the payment
of it; and that the defendant, as the principal debtor, was bound to refund
to the plaintiff the amount paid by him, in the suit brought by the bank.

*Held also,* that the law implied a promise by the defendant to each of the
indorsers to indemnify him, on his being compelled to pay the debt; but
that no promise was required, under the code, in order to sustain an action;
it being sufficient that there was an equitable obligation.

*Held further,* that in such action L. and R. were competent witnesses for the
plaintiff; the action not being prosecuted for their immediate benefit, upon
a just construction of the first clause of § 399 of the code.

That clause embraces only persons who are so connected with the action
as to render them virtually parties to the litigation.

Section 398 of the code being general, without any restriction, extends to
actions on contracts made before the code. It does not, when applied to
such contracts, impair their obligation, but has reference, rather, to the
remedy upon them; and the legislature had power to enact it.

THIS was an appeal by the defendant, from a judgment en-
tered against him, at a special term, after a trial at the Seneca
circuit, before Justice Welles, without a jury. The judge spe-
cified the facts found by him upon the evidence given on said
trial as follows: That on or about the 16th day of July, 1842,
one Nathaniel P. Lee had in his possession a promissory note
for the sum of two thousand dollars, made by himself, payable
to the order of one Augustine Reading, at the Seneca County
Bank, indorsed by said payee Reading, and also by the plaintiff
in this action, Neass; that the same was indorsed by said Read-
ing and said Neass for the accommodation of said maker, Lee,
and which note was not then dated, a blank having been left in
which to insert the date; nor was the time when said note
should become payable fixed by said note, but a blank was left
in which to insert the time when it should become payable;

that on or about the 16th day of July, 1842, at Waterloo, in the county of Seneca, the defendant Mercer solicited said Lee to let him, Mercer, have said note so indorsed, and, in consideration that Lee would let Mercer have said note, so that he, Mercer, could negotiate the same, Mercer promised and agreed, which said promise and agreement were verbal, that he would pay said note at maturity, and that he would save the indorsers harmless from any loss or damage which they respectively might sustain on account of their indorsement of said note; that Lee, in consideration of said promise and agreement, thereupon delivered said note to the defendant; that the defendant at the same time knew that said note was so indorsed for the accommodation of Lee; that the blank for the date of said note was filled by Mercer by inserting the word and figure July 9th, so that the date thereof was made to be July 9th, 1842; that the blank for the time when said note should become payable was filled by Mercer by inserting the words "nine months," so as to make said note read as follows: "Nine months from date, I promise to pay to A. Reading or order at the Seneca County Bank, two thousand dollars, value rec., Waterloo, July 9th, 1842." (Signed) "N. P. Lee." Indorsed, "Augustin Reading, George Neass." That the defendant negotiated said note, so indorsed, to the president, directors and company of the Seneca County Bank, and delivered the same to them, whereby they became the holders thereof; that the defendant did not pay said note; that on about the 23d day of August, 1843, the Seneca County Bank brought an action in the supreme court, against the plaintiff, Neass, as indorser of said note, to recover of him the moneys payable thereby; that the defendant, Mercer, during the whole time of the pendency of that action, was cashier of said bank, was a director thereof, and one of the principal financial officers thereof; that he knew of the commencement of said suit, and was cognizant of the proceedings in the progress thereof to its final determination in the court of appeals; that said bank, on or about the 27th of May, 1848, recovered a judgment in that action, in the supreme court, against Neass, on said note for $2889,96; that on the 20th day of July, 1850,

Neass paid said judgment, with interest thereon, amounting to the sum of $3319,43, to the bank, on account and by reason of his indorsement of said note, which was known to Mercer; that before the commencement of this action, the plaintiff requested the defendant in this action to make some arrangement with him with regard to the moneys so paid by the plaintiff to the bank; that the defendant Mercer neglected and refused to make an arrangement in reference thereto, and had neglected and refused to protect and save harmless the plaintiff from the damages so sustained by him; that the interest accrued on the sum so paid by Neass, to said bank, from the time of payment to the trial, was $291,71, making with the amount so paid, $3611,14, which sum the said judge decided was due from the defendant to the plaintiff for money so paid by the plaintiff for the defendant, and interest thereon.

And the judge specified his conclusions of law arising in the case as follows; that although it did not appear that the plaintiff Neass was expressly named when the promise and agreement of the defendant, Mercer, was made to pay the note, and to save the indorsers harmless from any loss or damage on account of their said indorsement, yet the plaintiff was sufficiently designated as indorser of the note, the note being present; and that Neass, the plaintiff, might maintain the action against the defendant upon such agreement.

Judgment was therefore entered in favor of the plaintiff, for the above amount.

*A. Worden,* for the appellant.

*P. G. Clark,* for the respondent.

*By the Court,* T. R. STRONG, J. It is not necessary to rest the judgment in this case, upon the position that the plaintiff was entitled to enforce, by action, the promise of the defendant to Lee, as having been made for the plaintiff's benefit. Upon the facts found at the circuit, it is clearly right on another ground. The plaintiff and Reading indorsed the note for the

accommodation of Lee the maker ; Lee loaned it to the defend-
ant for his accommodation, upon his promise to pay it at matu-
rity and save the indorsers harmless ; and the defendant
negotiated it to the bank for his own use. The note did not
have inception as a valid security until it was passed to the
bank. In the hands of the defendant, it could not have been
made available against either of the parties to it. It was the
act of the defendant in passing it, which gave it vitality, and
the sole consideration for it was received by him. The debt
created by negotiation of the note was therefore his debt, and
both Lee and the indorsers were sureties for the payment of it.
(*Baker* v. *Martin*, 3 *Barb. S. C. R.* 634. *Wooster* v. *Jenkins*,
3 *Denio*, 187. *Dowe* v. *Schutt*, 2 *Id.* 621. *Suydam* v *West-
fall*, 4 *Hill*, 216. *Saxton* v. *Peat*, 2 *Camp. N. P. C.* 185.)
Lee was surety of the defendant, by the loan to him and his
promise of payment and indemnity, and the indorsers were
sureties of Lee, by having indorsed for his accommodation, and
as such, occupied the position of sureties for the defendant.
The defendant was under obligation to Lee, by his promise, and
both to him and the indorsers, in equity and justice, and as the
principal debtor, to pay the debt and protect them from harm.
And this equitable obligation to the indorsers, connected with
the fact that the plaintiff was compelled to pay the debt to the
bank with the costs of the suit for its collection, was a suffi-
cient foundation for the judgment. (*Butler* v. *Wright*, 20
*John.* 367, 6 *Wend.* 284, 290. *Hunt* v. *Amidon*, 4 *Hill*, 345.
*Powers* v. *Ingraham*, 3 *Barb. S. C. R.* 642. *Elwood* v.
*Deifendorf*, 5 *Id.* 413. *Peck* v. *Ingersoll, in court of appeals*,
*December*, 1852.) The promise to Lee was of no importance
in the case. It was not necessary to entitle *him* to indemnity.
The law would, in the absence of an express undertaking, have
implied a promise by the defendant to indemnify him, and did
imply a similar promise to each of the indorsers, so far as any
was necessary to enable either to maintain an action against
the defendant for moneys paid, on being compelled to pay the
debt. A promise, however, was not required under the code,
as a basis for the action, as in the theory of the old action

of assumpsit, it was sufficient that there was an equitable obligation.

The complaint is adapted to the foregoing view of the case. It contains a claim for moneys paid for the defendant, and sets forth the facts which were proved. Thus regarding the case, Lee and Reading were competent witnesses for the plaintiff. The action was not prosecuted for their immediate benefit, upon a just construction of the first clause of § 399 of the code. That clause, in my opinion, embraces only persons who are so connected with the action as to render them virtually parties to the litigation. (*Evarts* v. *Palmer,* 7 *Barb.* 180, 181.   *Weston* v. *Hatch,* 6 *How. Prac. Rep.* 443.   *Harding* v. *Hodgkinson,* 4 *Eng. L. & E. Rep.* 462.   *Colombine* v. *Penhall,* 13 *Adol. & El. N. S.* 129.   66 *Eng. Com. L. R.* 128.   *See cases referred to in arguments of counsel.   Filch* v. *Bates,* 11 *Barb.* 471.) This construction has been given to it in several cases, in this district, not reported. The witnesses named did not stand in any such relation to this action. They were not parties to the claim or obligation sought to be enforced, or entitled to any part of the moneys which might be recovered, and no rights of theirs were involved in the action. Whatever benefit could be derived by them from a recovery by the plaintiff and a satisfaction of the judgment, would not be produced in the action, but would be a consequence of it.

Reading was probably competent as a witness, at common law. (*Farmers & Mechanics' Bank* v. *Griffith,* 5 *Hill,* 476.) So also was Lee, according to *Gregory* v. *Dodge,* (14 *Wend.* 593,) though not, I think, on principle.

The provision of § 398 of the code being general, without any restriction, must, I think, be held to extend to actions on contracts made before the code. It does not, applied to such contracts, impair their obligation; it has reference rather to the remedy upon them; and I am satisfied the legislature had power to make it. It does not so affect the remedy that a substantial remedy is not possessed by parties; on the contrary, I think the provision a wise one, and calculated to promote the attainment of justice rather than to work injustice. The credit

to be given to a witness, is for the jury or the court, when the trial is by the court, without a jury, to determine ; and when a witness is interested in a case, that fact will generally have its proper weight, in considering his testimony.

It was not material whether or not the answers of Lee to the interrogatories were in his handwriting ; the requirement of the statute is that the commissioner " shall cause the examination of each witness to be reduced to writing," &c.; and I see no impropriety in procuring the witness to write his answers under the direction of the commissioner. The evidence offered on that subject was therefore properly rejected.

Judgment affirmed.

[CAYUGA GENERAL TERM, June 6, 1853. *Selden, Johnson* and *T. R. Strong,* Justices.]