*244
By the Court:

Spencer, J.
There are several important questions ruled upon by the referee in the trial of this case to be considered before we reach the final question of the sufficiency of the evidence as received to support the findings and judgment.
First. Was the defendant a competent witness on the trial? The referee ruled that he was, and received his testimony. The argument of the appeal brought before the court much legal research and logic in favor and against the competency of the defendant as a witness, particularly as to the construction of the first section of the statute of 1867, entitled “An act to enable husband and wife, or either of them, to be a witness for or against each other or on behalf of any party in certain cases,” which provides as follows: “ In any trial or inquiry in any suit, action, or proceeding in any court or before any person having by law or consent of parties authority to examine witnesses or hear evidence, the husband or wife of any pa/rty thereto, or of any person in whose behalf any such suit, action, or proceeding is brought, prosecuted, opposed, or defended, shall, except as hereinafter stated, be competent and compellable to gime evidence the same as any other witness on behalf of any party to such suit, action, or proceeding.” As the law was before the passage of this act, the defendant would not have been a competent witness. But it appears to me that this statute relieves the case of all doubt, and enacts and provides substantially that, in a civil action of this character between husband and wife, either is a competent witness for or against the other. In the words of its provisions, “ the husband or wife of any party thereto shall be competent and compellable to give evidence the same as any other witness on behalf of any party.” In my opinion the letter and spirit of the statute supports the ruling of the referee on this question.
Second. Was the testimony of the defendant in regard to the conversations between the plaintiff and defendant in respect to these bills and advances, and the payment of the same, and the *245 state of accounts between them admissible ? The referee held that they were, and received the same. It is held by plaintiff’s counsel that there was error in this ruling. First—That at the time the conversations occurred they were privileged and were clearly inadmissible in evidence under the law as it then stood, and that the act of 1867 should not be so construed as to give to the same a retroactive force or effect, so that these conversations held before its passage, and inadmissible then, should become admissible since its enactment. There is much to be considered in this view of the question.
This act of 1867 is not one that can be classed or claimed as an “ ex post facto law,” prohibited by the Constitution of the United States, for it has long been held and settled by the courts of this State and the United States that this prohibition applies only to laws respecting crimes and punishments, and, so far as it affects or relates to this case, this act cannot be claimed as one “ impairing the obligation of contracts,” nor within any other class of laws prohibited. I am of the opinion that no law can be objected to simply because it may be said to be retroactive in its effect, if it does not endanger or disturb vested rights or impair the obligation of contracts, or in other respects come within constitutional prohibition. Our State legislature, when acting within the limits of the constitution of the State of Uew York and the United States, have that supreme power that Judge Blackstone ascribes to the British Parliament: “ It has sovereign and uncontrollable authority in the making, confirming, restraining, abrogating, repealing, reviving, and expounding of law concerning all matters of all possible denominations, ecclesiastical or temporal, civil, military, maritime, or criminal” (1 Black. Com., 160).
I also hold that this law is like many others in this State that by their enactment substantially changed the rules of practice and evidence in our courts, yet they have been held to extend to actions upon contracts made before their enactment; that they did not impair the obligation of contracts, but had reference only to the remedy upon them. It is true that this act *246 of 1867 establishes a new rule of evidence. It admits testimony that was prohibited before, and thus far affects or varies the remedy existing before.
In like manner section 398 of the Code established a new rule of evidence. It admitted witnesses and testimony that were excluded before its enactment, and yet it has been held that this provision extended to actions on contracts that were made before the adoption of the Code (Neass v. Mercer, 15 Barb., 322).
It is also contended that under the third section of the act of 1867 these conversations were inadmissible and prohibited. I am of the opinion that the conversations as disclosed were not of a confidential character, but even if they had been the third section does not prohibit a vohmtary disclosv/re. It only prohibits a compulsive disclosv/re. “ Ho husband and wife shall be compellable to disclose,” etc.
I am clearly of the opinion that no error was committed by the referee in admitting the defendant to testify as a witness in his own behalf, nor in permitting him to state the conversations between himself and plaintiff in relation to these accounts. In reviewing this case I find that objections were duly made to the admission and the sufficiency of the testimony on the ground that no written order or instrument in writing from plaintiff to defendant had authorized the payment of these moneys and bills by the defendant, or authorized him to charge the same to the plaintiff or upon her separate estate. The members of this court are unanimous in the opinion that no order or authority in writing was necessary in this case; that it was simply a case of dealing of a principal with an agent, where the principal had the full and absolute control of the subject-matter, namely, the estate or funds in question, and in regard to the disposal of which the principal directed the agent. The statute of 1848, as amended in 1849, gives to the married woman the same control over her separate estate as if she was single, namely, absolute control.
This case does not involve the principles and questions discussed in Yale v. Dederer (18 and 22 N. Y. Reps.) and in other cases where the liability of the married woman on a contract is *247 discussed. In this case there was a personal estate, a cash fund, belonging absolutely to the plaintiff, and absolutely under her control in the eye of the law. It was placed, or it reached and remained, in the possession of the defendant, her husband, with her consent, and was paid out and disposed of in divers sums and at divers dates in accordance with her orders, directions, and requests to him given. I think that the ordinary rules governing principal and agent must apply to the dealings between husband and wife in this case.
The statute entitled “An act for the more effectual protection of the property of married women,” as amended in 1849, possesses one unmistakable feature, be the same considered a virtue or defect. It withdraws all power or control of the wife’s separate property from her husband and vests the same in the wife “ in the same manner and with the like effect as if she were unmarried.” She may spend it as she lists. She may give it away to whom she wish, to her husband if she so please, or she may pay his debts with it; in fact, do with it as she pleases. There is no power in the courts to restrain or prevent her from the exercise of a married woman’s right under the statute, of holding or parting with her property at her will and pleasure. She may make her husband or any other person her agent in the care and control of the same, on such terms and subject to such direction, written or verbal, as she may prescribe; and in a case like this there is no power in the courts to prescribe any different rules for the observance of the husband as her agent in fulfilling her directions than the law provides for the observance of any agent towards his principal or any agent chosen by her other than her husband.
The court holds that no written order, request, or direction from the plaintiff to the defendant was necessary to authorize him to pay the plaintiff these sums of money, or to pay these different bills; that a verbal order or request was sufficient; and there being no conflict of testimony as to the fact that he paid the same in accordance with her verbal directions, the judgment should be affirmed.