DUTCHESS GENERAL TERM, January, 1850. *Barculo, Mc-Coun, and Morse,* Justices.

TILLOU & DOTY *vs.* THE CLINTON AND ESSEX MUTUAL INSURANCE COMPANY.

A material alteration of an instrument by the party seeking to enforce the same, made without the consent of the party executing it, will vitiate the paper, and deprive the holder of all rights under it.

Where an alteration is suspicious, and beneficial to the holder of the paper, the presumption is against the party who sets up the paper; and he is required to explain it, before he can recover.

It is always a question for the *court*, to decide, whether a paper is proper to be read in evidence, to the jury.

The reason of this rule is most emphatically applicable to the case of an altered or mutilated instrument, where the alteration is of such a character that the law pronounces the paper absolutely void, until explained.

But where, in such a case, the plaintiff offers evidence which affords a *prima facie* explanation of the mutilation ; or the fact of mutilation comes out on the part of the defence, after the plaintiff has made out his case, the case should be submitted to the jury.

THIS was an action of assumpsit on a policy of insurance. The defendants pleaded the general issue and gave notice of special matter in evidence. The cause came on to be tried before Justice Barculo at the Dutchess circuit in December, 1848. The plaintiffs produced and proved the original policy of insurance; also the notice and preliminary proofs, which were admitted to have been duly served. The plaintiffs also proved

the burning of the property insured on the 28th day of July, 1847. The plaintiffs also presented a paper of which the following is a copy :

"Hyde Park, July 12, 1847.

Mr. Richard Keese, Sir: We notify you that there was a mistake in our application to you for policy. The application says there was three thousand dollars in the Kingston Mutual Insurance Company, when there is but two thousand five hundred dollars. We also notify you that we have effected a policy in the Hartford Insurance Company on the said mill of two thousand dollars, and wish you to send us a certificate of your notice of the above policies. TILLOU & DOTY.

Mr. Richard Keese, secretary of the Clinton and Essex Mutual Insurance Company."

"Office C. & E. Mutual Ins. Co. July 16, 1847.

The consent of the company is given to the above.

RICHARD KEESE, director and sec'ry."

To the introduction of this paper the defendants' counsel objected. The plaintiffs then proved by a witness that Richard Keese acknowledged to him that the consent to said paper was in his hand-writing, and that he was secretary and director of said company. On his cross-examination the witness testified that Keese further stated that said assent had a postscript appended which had been torn off of the paper, which postscript stated that the insurance company consented to the insurance mentioned in the notice, provided the whole amount did not exceed two-thirds of the value of the buildings. The plaintiffs offered the notice and consent in evidence ; which was objected to. The court decided that the paper could not be received : to which decision the counsel for the plaintiffs took exceptions. The plaintiffs further proved by another witness that the said Keese was at Hyde Park the day after the grist mill mentioned in the policy was destroyed by fire, which was on the 23th day of July, 1847 ; that he conversed with him in respect to said fire ; that said Keese first said that the consent he had given was in substance as follows: "The consent of the company is given to the above, provided the whole amount of the insurance

does not exceed two-thirds of the value of the buildings," signed "Richard Keese, director and secretary;" that when the said paper was produced and shown to him he then stated that there was another consent sent after the above; that after sending the assent with the postscript, the plaintiffs had written to him that the first assent was not received, and that thereupon, believing the letter to be lost, he wrote a second letter containing his consent with the same condition in the body of the second letter which was in the postscript of the first letter; that on the witness stating to him that they had a right to insist upon the first consent they had received, Keese insisted that the first consent was contained in a postscript, which had been torn off. Upon this testimony the plaintiffs' counsel again offered the said letter and consent in evidence to the jury; which offer the court rejected, and the counsel for the plaintiffs excepted to the decision. The plaintiffs then called another witness, who testified that he was acquainted with said Keese ; that he was secretary and director of the said insurance company; that the witness had seen him write ; was acquainted with his hand-writing, and that the consent, body and signature, was in said Keese's handwriting. Upon which the plaintiffs' counsel again offered the paper to go to the jury, which was objected to by the counsel for the defendants, and the court decided that the same could not be read in evidence. To which decision the counsel for the plaintiffs excepted. The plaintiffs' counsel then offered to prove a second notice, dated July 17, 1847, of the same contents of the first, sent to the defendants and received back by the plaintiffs, July, 30, 1847, upon which was written a consent in the words following, to wit:

"Office C. & E. Mutual Ins. Co. July 27, 1847.
Messrs. Tillou & Doty,

Gents. The consent of the company is given, if the whole amount of insurance does not exceed two-thirds of the value of the property insured.

RICHARD KEESE, director and secretary.

The other notice was received and answered, but may have miscarried. R. KEESE."

Tillou *v.* The Clinton and Essex Mutual Ins. Co.

This was offered by way of explaining the mistake of Keese in supposing the first paper contained the conditions insisted on by him. The plaintiffs' counsel offered to let both papers go to the jury; which was objected to by defendants' counsel. Upon which the court decided that the last paper offered might be proved and read in evidence to the jury, but that the first paper or consent could not go to the jury. To which decision the counsel for the plaintiffs excepted, and rested. Whereupon the court ordered judgment of nonsuit to be entered; to which the counsel for the plaintiffs excepted; and upon a case, moved for a new trial.

*Jno. Thompson*, for the plaintiffs.

*H. Swift*, for the defendants.

*By the Court*, BARCULO, J. The evidence touching the consent bearing date the 16th July, 1847, together with the torn appearance of the paper, was sufficient to authorize the conclusion drawn by the judge at the circuit, that the paper had been *essentially altered* by the plaintiffs after it had been transmitted to them by the secretary of the defendants. The execution of the consent was proved by the admission of the secretary; who accompanied the admission with the declaration that the paper had been since mutilated. The evidence of the alteration is, therefore, of as high a character as that of its execution; and although some of the recent authorities hold that a portion of an admission may be *believed* and a portion *disbelieved*, it can not be denied that the tribunal which is to try the question of fact, *may* believe *both* portions. In this case the judge at the circuit, considering this statement confirmed by the mutilated appearance of the paper, found, as a question of fact, that the alteration had been improperly made by the plaintiffs since the execution of the paper.

As a question of law, I apprehend that it will not be contended that such an alteration did not vitiate the paper, and

deprive the plaintiffs of all rights under it. (8 *Cowen*, 71. 12 *Wend.* 173.)

It has long been a disputed point whether the burden of explaining an alteration apparent upon a paper devolved upon the party seeking to enforce it, or the party sought to be charged. It would seem that, in some of the states, an alteration, not peculiarly suspicious, must be presumed to have been made before execution. (11 *Conn. Rep.*, 531. 1 *Halstead*, 215. *Cowen & Hill's Notes*, 298, 1317, &c.) But when the alteration is suspicious, and beneficial to the holder of the paper, the more sensible rule prevails, at least in this state and in England, that the presumption is against the party who sets up the paper; and he is required to explain it, before he can recover. (2 *Wend.* 555. *Vide also note to Waring* v. *Smyth*, 2 *Barb. Ch. Rep.* 119.)

But it is contended that the case should have been submitted to the jury. This would have been true, if the plaintiff had offered evidence which afforded a *prima facie* explanation of the mutilation; or if the fact of mutilation had come out on the part of the defence, after the plaintiffs had made out their case. But no explanation was given, or offered. The evidence which professed to explain, or rather to deny, the alteration, tended strongly to establish the fact, and confirm the declaration of the secretary.

As I understand the rule, it is always a question for the *court* to decide, whether a paper is proper to be read in evidence to the jury. The reason of the rule is most emphatically applicable to the present case; for the alteration was of such a character as that the law pronounces the paper absolutely void, until explained. If, therefore, the case had been submitted to the jury and a verdict found for the plaintiffs on that evidence, this court would have been compelled to set aside the verdict; and in all such cases it is the obvious duty of the judge to direct a nonsuit; even if both parties have given testimony. (*Graham on New Trials*, 280.) It is not unusual for the judge to reject the altered paper, and direct a nonsuit. In the case of *Penny* v. *Corwithe*, (18 *John.* 499,) a submission to arbitrators

Tillou *v.* The Clinton and Essex Mutual Ins. Co.

was offered in evidence, but it appearing that a black line had been drawn through the name of one of the parties, since its execution, the judge refused to permit it to be read in evidence, unless the plaintiff showed that the rasure had been made by the consent of the parties. The plaintiff then offered to prove the fact; but the judge rejected all evidence on that point, except that of the *subscribing witness*, and nonsuited the plaintiff: and for this last ruling of the judge, a new trial was granted. So in the case of the *Adm'rs of Price* v. *Adm'rs of Tallman*, (1 *Coxe*, 447,) a bond was produced, and the subscribing witness stated that there had been a writing at the foot of the bond, which had been cut off. The court would not permit the bond to be read in evidence, although the plaintiff offered to prove the contents of the writing torn off, and to satisfy the jury that it was immaterial. The plaintiff was *nonsuited.*

In *Knight* v. *Clements*, (8 A. & E. 215,) a bill of exchange was offered by the plaintiff, but it appeared that the word "three" had been blotted, and "two" written upon it. The court held that the plaintiff was bound to explain it *by evidence*, and that the jury could not infer from the appearance of the bill that the alterations had been made when the bill was drawn; and a *nonsuit was ordered.* (*See also* 2 *Starkie's Rep.* 313; 5 *Bing.* 183.)

That it is a question for the court, when objection is made to the admissibility of the evidence, is shown by the case of *Ross* v. *Gould*, (5 *Greenl.* 204, *cited* 1 *Greenl. Ev.* 599.)

The motion for a new trial must be denied.

New trial denied.