BURBANK, President of the Eagle Bank of Rochester, *vs.* BEACH and others.

The nominal proprietor of an individual bank, who furnishes the securities to the comptroller, and to whom the circulating notes of the bank are delivered by that officer, and in whose name, as proprietor, all the contracts and transactions of the bank are made and conducted, is a " trustee of an express trust" within the meaning of § 113 of the code; and may therefore properly sue, upon a bill discounted by the bank, without uniting, as plaintiffs, other persons interested in the bank, as co-proprietors with him.

The authority of a notary, to demand payment of a bill and give the requisite notices, is to be inferred from the fact that the bill is in his possession.

And if his certificate states that he presented the bill, and protested the same, at the request of a particular bank, it may also be fairly inferred that he received the bill from that bank, and, as they had possession of it, that they were duly authorized to employ the notary.

Where a notary's certificate states that presentment and demand were made at the maturity of a bill, "at the office of C. & S. the acceptors," this language imports that the office was their place of business; and it will be presumed, in favor of the notary, that the time in the day was proper.

Where the certificate states that the notary " gave notice of the non-payment of the said bill of exchange, to the drawer and indorser, as follows," showing a due service by mail, it will be understood to mean that the notice was of non-payment on due presentment of the bill for payment, as stated in the certificate.

A reasonable intendment in support of the official act of the notary, will warrant that construction.

If the party sought to be charged has not received notice of non-payment, it is in his power, by annexing to his answer an affidavit denying its receipt, to make it necessary for the plaintiff to prove the notice, in some other way than by a notary's certificate. If notice was received, and is defective, he may produce it and have the benefit of the defect. If he does neither, all presumptions should be strongly against him.

A verbal agreement to extend the time for payment of a bill of exchange, made previous to the execution of a mortgage to secure the payment of the bill, and constituting a part of the agreement for such mortgage, will be merged in the mortgage, when executed, and the latter will be taken as expressing the true and whole agreement in regard to the time of payment.

And if the mortgage does not extend the time of payment, an indorser cannot claim that he is discharged by reason of the parol agreement to extend the time.

IN this action the plaintiff sought to charge the defendant, William Beach, as indorser of a bill of exchange for $2000,

drawn on the 26th day of August, 1851, by defendant, Peter Boyce, upon Chipman & Savage, also defendants, and accepted by them, and indorsed by the defendants M. Boyce and W. Beach respectively, payable forty-five days after the date thereof.

The complaint alleged the making, drawing, accepting and indorsing of said bill of exchange by the defendants as above stated ; that at its maturity it was presented to and payment was demanded of the acceptors, which was refused, and that thereupon the bill was duly protested and notice of protest was given to the drawer and indorser respectively. The complaint also alleged that the plaintiff was the owner and holder of said bill, and demanded judgment against the defendants for the amount of said bill, interest and costs. The defendant Beach denied specifically the allegations in said complaint and all liability on said drafts as an indorser thereon. He also claimed to be discharged from any liability upon said bill by reason of an agreement alleged by him to have been made and entered into without his knowledge or consent, for a valuable consideration, between the plaintiff and defendant, Peter Boyce, for whose accommodation said bill was drawn and indorsed, extending the time of payment of said draft for a definite period beyond its maturity. The plaintiff denied all allegations of the defendant in his answer constituting a defense or counter-claim. The issues joined as to defendant Beach were referred to Isaac R. Elwood, Esq. as sole referee. On the trial, before the referee, the plaintiff produced the bill of exchange set forth in the complaint, accepted by Chipman & Savage and indorsed by Manchester Boyce and William Beach ; and the indorsement of Beach was admitted by his counsel; and the signatures of the other parties proved. The certificate of the notary was then introduced, by which he certified that on the 13th of October, 1851, at the request of the Bank of Albany, he, the notary, presented the bill *at the office of Chipman & Savage*, the acceptors, and demanded payment of the same, which was refused. That thereupon he protested said bill and on the same day gave notice of the non-payment thereof to the drawer and

indorsers, by mail. The counsel for the defendant objected to the reading of the bill of exchange in evidence, because the certificate of the notary showed that the alleged protest and the notice therein certified to have been given to the defendant, were insufficient to charge him as indorser. The objection was overruled by the referee. Charles P. Bissell, a witness for the plaintiff, testified that the plaintiff, Mr. Burbank, Mr. David Cope, himself and others were joint proprietors of an individual bank, known as the Eagle Bank of Rochester, and the bill was discounted at this bank. Mr. Burbank was president, and was the nominal proprietor of the bank; the witness and others were interested with him; that is, interested in all the transactions of the bank. Burbank, Cope and the witness continued interested in the bank up to the maturity of the bill; the bank then held it. On the 13th October, when the bill matured, the bank was still an individual bank. The bill was discounted for Peter Boyce—possibly for Beach. The witness was cashier at the time of this discount. It was paper originally discounted for Peter Boyce, and witness thought it was Boyce's draft on Chipman & Savage. That no one was interested in the bank at the time of the discount and up to its maturity except Burbank, as nominal owner, and the witness and Cope jointly interested with him. On his re-direct examination this witness testified that they paid part money for this paper when discounted. The plaintiff, by his counsel, moved that the testimony of this witness, relating to the proprietors of the Eagle Bank, be stricken out as irrelevant and immaterial upon any of the issues of the action. But the referee refused so to do, and the plaintiff excepted. It was agreed by the respective counsel that this suit was commenced November 17, 1851. On his re-examination, this witness further testified as follows: "Gideon W. Burbank was the individual banker of the Eagle Bank; he furnished the securities to the comptroller; the circulating notes of the bank were delivered to Burbank by the comptroller. The notes or bills were 'I promise to pay,' &c., and named the Eagle Bank. They were signed by me as cashier and Burbank as president. It was called the Eagle Bank; but so far as neces-

Burbank *v.* Beach.

sary to use any name, Burbank's name was used, except that I was cashier of the bank. Cope's and my interest arose from our having advanced specific sums of money to Burbank for the capital. We were to receive dividends from the earnings of the bank as interest. There was a certificate filed with the comptroller at the beginning of the organization of the bank, showing in whose name the business of the bank was to be conducted. Gideon W. Burbank acted as president; I think it was not generally known that other persons were interested; Burbank was ostensibly the sole proprietor. I received a salary as cashier." The defendant's counsel again insisted that the protest of the said bill of exchange was insufficient, and that said evidence was insufficient to charge the defendant Beach; and being called upon by the counsel for the plaintiff to specify wherein the said protest and evidence were insufficient, stated that the certificate of the notary showed that the said bill of exchange was not sufficiently or properly protested to charge this defendant, inasmuch as it did not appear that a proper demand had been made at the proper place, nor that the demand was properly made; because no hour of the day was stated when the demand was made; because no personal demand was made of the acceptors or either of them; because the person making the demand had no authority to make it, nor was the demand made by or for the proper person; because it did not appear that any notice of the demand of payment was given to the defendant, but merely a notice of non-payment; because the demand was not made at the request of the owner. Which said several objections were overruled by the referee. Peter Boyce was then called as a witness for the defendant, Beach, and testified as follows: "I have seen this bill of exchange before; it was discounted by the Eagle Bank of Rochester for me, about the time of its date—probably on the day of the date. William Beach was an accommodation indorser upon the bill. After the discount, I had a conversation with Burbank about payment and giving security and extending time of payment of this bill; it was after the bill was due; it was two or three days before a mortgage was given, which bears date October

18, 1851; it was at the Eagle Bank in Rochester. Burbank introduced the subject about the payment of this bill. He said if I would give him a mortgage on the mill he would extend my paper to such and such dates. This bill was on one of the pieces of paper referred to. I told him that I would do it. The paper I hold is the mortgage I gave in pursuance of this agreement or conversation. I delivered it to him on the day of its date; he accepted and took the mortgage. This bill was to be extended to the 15th January then next. I made this arrangement without the knowledge of the defendant Beach. This bill was discounted for my benefit. It was presented for discount by me personally." The mortgage referred to was then read in evidence.

It recited that Boyce was indebted to Burbank, president of the Eagle Bank of Rochester, as drawer of certain bills of exchange, (one of which was the one in question, in this suit,) which had been discounted by said bank, and was given for the purpose of securing the payment thereof; the condition being that Boyce should pay to the Eagle Bank, the said drafts, and the sums of money secured to be paid thereby, and all and every such sum or sums of money as Burbank, his successors or assigns, should at any time advance, lend or pay to Boyce, or on his account or behalf, upon or by way of discount, &c., and it was expressly agreed and understood that said mortgage was in no way to affect or impair any security held by the mortgagee for the payment of the sums of money and drafts therein mentioned, but was intended to be in addition thereto. The witness further testified that after the mortgage was drawn, he at first refused to sign it, on the ground that it was not according to the agreement, because it required him to pay the drafts, &c., without extending the time of payment. But that he finally executed the mortgage, on Burbank's assuring him that he might rely upon the arrangement being carried out, just as it had been agreed. The counsel of Burbank testified that he advised Burbank that no time could be given to Boyce in the mortgage, without discharging the indorsers; and that this

Burbank *v.* Beach.

was the reason of Burbank's refusing to insert such a provision in the mortgage, and Boyce was so informed at the time.

The referee reported in favor of the plaintiff, for the amount claimed; and judgment was entered upon his report, from which the defendant appealed.

*Geo. Underwood,* for the appellants.

*Geo. F Danforth,* for the respondent.

*By the Court,* T. R. STRONG, J. The plaintiff, in respect to the interest of Bissell, Cope and others, in the bill of exchange, must be regarded as a "trustee of an express trust," within the meaning of that phrase in § 113 of the code; and might therefore properly bring the action, without uniting those persons with him. He was the nominal proprietor of the bank; all the contracts and transactions of the bank were in his name as proprietor; and he is clearly within the last clause of the section referred to. But, aside from that section, the objection of nonjoinder of those persons cannot prevail, it not having been taken in the answer. (*Code,* §§ 144, 147, 148.)

The authority of the notary, to demand payment of the bill and give the requisite notices, is to be inferred from the fact that the bill was in his possession. (*Bank of Utica* v. *Smith,* 18 *John.* 229. *Story on Bills,* § 360.) If the statement in his certificate, that what he did was done at the request of the Bank of Albany, is of any importance, it may also fairly be inferred that he received the bill from that bank, and as they had possession of it, that they were duly authorized to employ the notary.

The evidence of due presentment of the bill for, and demand of, payment, is sufficient. It appears by the notary's certificate, that the presentment and demand were made at the maturity of the bill, "at the office of Chipman & Savage, the acceptors;" this language imports that the office was their place of business; and it will be presumed in favor of the notary that the time in the day was proper. (*Story on Bills,* § 351. *De Wolf* v. *Murray,* 2 *Sandf.* 166. *Cayuga Co. Bank* v. *Hunt,* 2 *Hill,* 635.)

In respect to notice of dishonor of the bill, the certificate states, that the notary " gave notice of the non-payment of the said bill of exchange to the drawer and indorsers as follows," showing a due service by mail. If the notice was, simply, that the note had not been paid, it was defective ; notice of the demand of payment was also necessary. (*Story on Bills,* § 390. *Sto. on Prom. Notes,* § 350. *Dole* v. *Gold,* 5 *Barb.* 490.) But the certificate does not purport, and was not required, to contain a copy, or the contents of the notice given ; and I am inclined to think it must be understood to mean, that the notice was of non-payment on due presentment of the bill for payment, as stated in the certificate. (*Seneca County Bank* v. *Neass,* 3 *Comst.* 442, *and cases cited. Warren* v. *Warren, Law Reporter, March,* 1844, *vol.* 6, *p.* 501.) A reasonable intendment in support of the official act of the notary, warrants that construction. If notice was not received by the defendant, it was in his power, by annexing to his answer an affidavit denying its receipt, to make it necessary for the plaintiff to prove the notice, in some other mode than by a notary's certificate. (*Laws of* 1833, *ch.* 271, § 8.) If notice was received by him, and was defective, it was in his power to produce it, and have the benefit of the defect. As he has done neither, all presumptions should be strongly against him.

The verbal agreement testified to by Boyce that the time of payment of the bill in suit should be extended, was, according to his testimony, part of the agreement for the mortgage, and made at, and prior to, the execution of the mortgage ; and it is a fatal objection to it that it contradicts that instrument. The mortgage describes the bill in suit; the condition of the mortgage is, that it shall be paid with other bills and sums, and authority is given to sell the premises, in case default shall be made in payment of any sum secured. It contains no provision for an extension of the time of payment of any paper. According to the mortgage, no other time being specified, the bill was to be paid at maturity, which was the 13th of October, 1851, and the mortgage might have been enforced, in respect to it, upon its non-payment at that time ; but according to the verbal

agreement, the time of payment of it was extended to the 15th of January, 1852. The mortgage, then, provided for its payment at one time, and the verbal agreement at another. Here is a direct contradiction, and it is plain that the mortgage must be taken to express the true and whole agreement in regard to the time of payment. (*Farmers and Man. Bank* v. *Whinfield,* 24 *Wend.* 419.)

The defendant cannot set up the verbal agreement, if Boyce could not. His rights have not been affected, if time has not been given by an agreement which Boyce could avail himself of.

There is nothing in the position, that the verbal agreement between Boyce and the plaintiff, as soon as made, and before the execution of the mortgage, effected a discharge of the defendant. The plaintiff proposed to extend Boyce's paper to certain dates, if he would give the plaintiff a mortgage on his mill, and Boyce said he would do so. An extension could not be claimed by Boyce, under this agreement, before he executed the mortgage.

The judgment appealed from must be affirmed.

[CAYUGA GENERAL TERM, June 6, 1853. *Selden, Johnson* and *T. R. Strong,* Justices.]