## SUPREME COURT.

### The Artisans' Bank, respondent agt. Charles C. Backus, appellant.

A *point* which is waived and not argued by counsel at the hearing of the appeal, ought to be examined by the court on their own motion, if any member deems it a material ground for granting a new trial.

Where there is a conflict of testimony as to when and by whom *the alteration of the date of a note*, in suit, was made, which alteration is palpable on its face, it is a proper question to be left to the jury to decide, although the action is against the *indorser.*

A *notice of protest without date*, and not stating on what day the note was presented for payment, is not fatally defective for such omissions. (Ingraham, *P. J., dissenting.*)

It is not a discharge of the *indorser* of a note to take a mortgage from the maker by the holder, as security, without the indorser's assent, *if the time of payment is not extended.*

*New York General Term, January,* 1866.

*Before* Ingraham. *P. J.,* Leonard *and* Barnard, *Justices.*

This action was brought against the defendant Backus as indorser of a promissory note made by James R. Gilmore, for $5,120.70 ; this note was made and passed to the plaintiff to stand in the place of and to take up another note for the same amount, made and indorsed by the same parties, and which fell due the 7th day of November, 1857—the date of the note in suit, as the plaintiff claims. The first note, of which the note in suit is a renewal, was given for a loan made by the plaintiff. An alleged alteration of the date of the note, and an alleged contract by the plaintiff to extend the time of payment, and the alleged releasing of certain securities, constituted the defence.

The action was tried before Mr. Justice Leonard and a jury, October 13th, 1863, and a verdict was rendered in favor of the plaintiff for $6,957.86.

Judgment for plaintiff for $7,403.25, was entered thereon, December 21, 1863, the defendant's motion for a new trial having previously (Dec. 18,) been denied at special term.

This appeal is from the order denying said motion, and also from the judgment.

SANFORD & WOODRUFF, *attorneys, and*
L. B. WOODRUFF, *counsel for appellant.*

I. The motion for a non-suit should have been granted when the plaintiff rested. The alteration of the date of the note appeared upon its face.

The alteration was material—it affected directly the time when payment could be required.

When such an alteration appears, the note is invalidated unless it be shown by some evidence that the alteration was made before the note was issued, or that it was made by the consent of the parties to be affected by the alteration.

No such evidence had been given. (1 *Greenleaf's Ev.* 564; *Knight* agt. *Clements*, 8 *Ad. & El.* 215; *Cariss* agt. *Tatersall*, 2 *M. & G.* 890; *Clifford* agt. *Parker*, 2 *M. & G.* 909; *Waring* agt. *Smyth*, 2 *Barb. Ch.* 119, *note; Herrick* agt. *Malin*, 22 *Wend.* 388.)

II. The nonsuit should have been ordered at the close of the testimony, or the jury should have been instructed peremptorily that the defendant was entitled to a verdict.

1. It was shown that when the note passed into the hands of Mr. Platt, the president of the plaintiff, it bore date the 7th of November.

There was no evidence that the alteration was made by the consent of the defendant, Backus, the indorser.

Evidence, that when Mr. Platt delivered the note to the clerk, it had been altered, did not contradict the defendant's affirmative proof, or tend to show that the indorser consented to the alteration.

2. The true date of the note being, when indorsed by the defendant, November 8th, it became due 93 days thereafter, *i. e.* February 9th. No demand of payment was made on that day, and the indorser, the defendant, was therefore discharged.

3. The notice of protest was not sufficient to charge the defendant as indorser.

(a) The notice must show that the presentment was made at the proper time; and a mere general statement in a notice

without date, that the note "is protested" does not so import. It may have been protested either before or after maturity. (*Wynne* agt. *Alden*, 4 *Denio*, 163; *Ransom* agt. *Mack*, 2 *Hill*, 587; *Remer* agt. *Downer*, 23 *Wend.* 626; *De La Hunt* agt. *Higgins*, 9 *Abb.* 422.)

(*b*) In *Cook* agt. *Litchfield* (5 *Seld.* 279), the notice stated that the note was protested "on the day that the same became due." And in *Youngs* agt. *Lee* (2 *Kern.* 552), the notice was dated as of the day when the note matured.

4. The testimony of two witnesses showed, without any contradiction, that the bank extended the time of payment of the indebtedness of Gilmore (for which this accommodation indorsement was held as collateral security) for the period of twelve months.

Gilmore testimony, folios 62 to 65. Accommodation indorsement delivered as collateral security. Gilmore, folios 66-68, 72-75, 91-94. W. R. Martin, folios 126 to 136.

The testimony of Gilmore and Martin proved the making of the agreement, upon an ample consideration, the performance of the agreement by Gilmore, the actual reception of the mortgages by the bank as valid subsisting securities and the placing the same on record. The retention of one of them for nearly two years (to April 6, 1860), and the possession of the other till the present time.

As matter of law upon this uncontradicted evidence the defendant was discharged (*Pitt* agt. *Congdon*, 2 *Coms.* 352).

5. The mortgage itself contains a clause which of its own force bound the bank absolutely to look to the mortgaged premises. This either released Gilmore or bound the bank to exhaust their remedy against the lands and so suspended their remedy against him. In either view it discharged the indorser.

6. The proof was alike uncontradicted and in part in writing, that the bank surrendered the mortgage for $35,322.85, which was held as security for the same indebtness of Gilmore. This discharged the surety, the defendant.

(*a*) The mortgage was acknowledged to be satisfied.

(*b*) Or it was given up without satisfaction or payment. In either case the indorser is discharged.

III. The charge of the judge was erroneous, and he should have charged in relation to the notice of protest as requested.

1. The notice was not sufficient to apprise the defendant of a demand of payment on the dey on which the note became due (*Authorities' supra*).

2. There was no conflict of evidence which made it proper to submit the questions to the jury whether there was a valid subsisting agreement for the extension of time for the payment of Gilmore's indebtedness, performed by him, by the delivery of the mortgages and their acceptance by the bank.

It was proved by two witnesses, and by the papers themselves shown to be in the plaintiff's possession. And there was no contradiction. (*Lomer* agt. *Meeker*, 25 *N. Y.* 361; *Dascomb* agt. *Buffalo and State Line R. R. Co.* 27 *Barb.* 221, 228; *Ernst* agt *Hudson River R. R. Co.* 24 *How. Pr. R.* 97, *Court of Appeals September*, 1862.)

IV. Upon the proofs and the law as declared by the court the verdict is against both the law and the evidence.

V. The judgment and the order appealed from should be reversed and a new trial ordered.

A. PRENTICE, *attorney and counsel for respondent.*

I. Two questions only were litigated on the trial. Some minor points were made by the defendant, but only the two require any particular attention. These were, first, whether the date of the note had been altered since its indorsement and delivery; and second, whether the plaintiff ever made an agreement to extend the time of payment of this debt and subsequently surrendered security, of which the defendant was entitled to the benefit.

II. These two questions were both questions of fact for the jury; the court submitted both to the jury, and their decision was a decision of these as well as all the other issues submitted to them.

III. But these questions call for a closer examination.

The evidence on the question of the alteration of the note is simply this: Backus, the defendant, says, he did not notice the date, and knows nothing about it.

Gilmore, the maker of the note, swears expressly, "I mean to tell this jury and all creation that I am a merchant, and I learned with my first A, B, C, not to alter a note, and I never did."

Again, at folio 90, this witness is asked if he ever made a mistake in the date of a note and then altered it? he answers, "Never, sir, I learned that lesson before I was twelve years old."

This was all the defendant's evidence of an alteration of the note.

(a) The plaintiffs' evidence was the fact proved by the defendant himself and Gilmore that this note was intended by both to bear date the day the first note fell due.

The testimony of Henry C. Tanner and Thomas Picton, both then clerks in the bank, that the note in suit had the same date as it now has when it came to the bank.

Also, the testimony of Wm. R. Martin, Henry C. Tanner and Thomas Picton, that the figure 7 made over the 8 is not in Mr. Platt's (the president) handwriting; the two latter also state expressly that it is in the handwriting of Gilmore, the maker of the note.

(b) This is the substance of the testimony on both sides as to the alteration, and it is submitted could leave no doubt on the mind of any person when or by whom the 7 was made over the 8.

IV. The evidence upon the alleged contract for extending the time of payment of this note is in substance this:

Gilmore says, "I was to give the bank security on a considerable amount of property in New Jersey, and the bank was to loan me $10,000 on the property, I applying this $10,000 to the improvement of certain property, the bank holding the title to that property while the improvements were going on. Thus, in that way, the bank had security for the $10,000 new loan, and receiving the mortgage of $10,000 and $5,000 as additional security for the whole

Artisans' Bank agt. Backus.

indebtedness " It should be remembered that this arrangement was made, as is alleged, between a man that is dead and this witness. Now let us see what was done and not done, as this witness says and the case shows:

1st. The first thing, and which was *not* done, is, the title of no land was ever put into the bank; this, according to the witness' own story, was to be the first thing done, as the bank was to hold the title while the bank's money was expended in improving it. This was a condition precedent to any other step.

2d. The second thing, and which was *not* done, is, that no mortgage of $10,000 and $5,000 was ever made " as additional security for the whole indebtedness." This was also another condition precedent in the transaction, and was neither done or offered to be done by the witness.

3d. The third thing, and which *was* done, is, that two mortgages were executed entirely different in amount from that called for in the alleged agreement. These mortgages were each for $35,000, upon two pieces of property; whereas, the agreement sworn to called for only $15,000 mortgage on a "*considerable* amount of property in New Jersey."

4th. The fourth thing, and which was *not* done, is, that the bank never advanced any portion of this $10,000.

5th. The fifth thing, and which *was* done, is, that the bank returned one of these $35,000 mortgages upon request, and without any payments being made; and it is fair to be inferred, would the other if asked for.

6th. The sixth thing, and which *was* done, is, that a proposed agreement was drafted between the parties, but never executed by either. This agreement was wholly different from the one stated by the witness as the extension; one called, among other things, for two mortgages of $35,000 each; the other for mortgages for $10,000 and $5,000, and for the title of the land to be improved to be in the bank.

V. It clearly appears from the above, and from other facts in the case not cited, that not one single *act* was ever done with the concurrence of both the parties, or even by either one of them, in accordance with the agreement Gilmore

states. All that can be made of his statement of the agreement, is, that every act that was done at the time contradicted it, and all that can be made of the *acts* that did take place is, that they were never completed so as to be binding on either party.

(*a*) Gilmore, although attempting to carry this case on his own shoulders unaided, does not attempt to swear that the drafted agreement was ever signed by either party. Martin states expressly it never was signed. .

VI. Such are the main points of the evidence the jury were called upon to credit, and upon which they were asked to say the bank had made a contract which would release this defendant.

Certainly there was evidence sufficient to require the court to submit the case to the jury.

If there was such evidence and the case was properly left to them to decide, then it is submitted this court should not interfere with their decision.

VII. The only question upon which counsel upon either side addressed the jury was, whether Gilmore could be believed or not. His testimony was given in a way to make any cautious man doubt his word. His manner was suspicious to the last degree.

If the court will refer to folios 80 and 81, they will see a sample of the witness' extravagant answers. These, with the acts done at the time, and Martin's evidence, made the jury disbelieve him. And, besides all this, he was seriously impeached by his denial of the alteration of the date of the note.

VIII. Several exceptions were taken on the trial, some of which I shall notice; others are not deemed of sufficient importance.

(*a*) A motion was made to dismiss the complaint at the close of the testimony, upon various grounds :

1st. That the note had been altered in date. We answer, this was a proper question on all the evidence for the jury; the result showed they thought not.

2d. The second ground of nonsuit was, that the note was

Artisans' Bank agt. Backus.

protested on a wrong day. We answer this would be so, provided the note bore date on the 8th; but the jury said it did not, and their say is conclusive.

3d. The third ground of nonsuit was, that defendant had never received sufficient notice of protest. We answer, this notice contained nine distinct and positive assertions, and together gave all the information, and much more than the defendant was legally entitled to. They are as follows:

1st. That the instrument is a promissory note.

2d. That J. R. Gilmore is the maker.

3d. That the amount is $5,120.70.

4th. That the date is November 7th, 1857.

5th. That it is payable at the Artisans' bank.

6th. That the time it has run is 90 days.

7th. That it is indorsed by you.

8th. That it is protested for non-payment.

9th. That the holders look to you for the payment.

The point raised on the trial was, that the notice did not say the note had been presented, or on what day the note was protested. We answer, the notice does say this in substance; it says it bore date November 7th, 1857, and had 90 days to run, and is protested. No conclusion can be fairly deduced from this, except that it was protested at the expiration of the 90 days.

This point was made the subject of a request to charge; but if the notice was sufficient, this request can have no more force than the exception.

It should be borne in mind that the certificate of protest was put in evidence; this showed that the note was presented February 8th, 1857, and payment demanded and refused. (*The Cayuga County Bank* agt. *Warden and al.* 1 *Com.* 413; *Bank of Cooperstown* agt. *Woods,* 28 *N. Y.* 545.)

4th. The fourth ground of nonsuit was, that the plaintiff made an agreement to extend the time of payment of this note. We answer, whether it did or did not, was a question on all the evidence for a jury. They said it did not, and their answer is conclusive.

(*a*) Whether this contract was ever made or not, and

whether the note had been altered or not, were the only two questions upon which counsel addressed the jury on the trial.

The plaintiff claimed that Gilmore could not be believed, and the jury were of the same opinion.

5th. The fifth ground of nonsuit was, that the mortgage contained a clause which would release the defendant. We answer, this mortgage was, as defendant proved, a part of a proposition for a settlement never agreed to, and was to be a portion of the agreement never made, as the jury say. In fact, this position is but a subdivision of the fourth. The defendant did not pretend that this mortgage had any force, except as a part of this alleged agreement, which the jury did not believe was ever made (*Brackett* agt. *Barney*, 28 *N. Y.* 333).

6th. The sixth ground of nonsuit is, that the plaintiff gave up a mortgage which formed a portion of the security for the payment of this note. We answer, this mortgage had no force unless the agreement was made. The jury said it was not made. But the defendant is not a surety. He is an indorser. He would have no right of subrogation. And it makes no difference as between the plaintiff and this defendant that he is an accommodation indorser. (*Bradford* agt. *Corey*, 5 *Barb.* 462; *Sisson* agt. *Barrett*, 2 *Comst.* 406; *Edwards on Bills*, *p.* 293.)

IX. It is submitted, in conclusion, that the two questions of fact in the case, to wit: Whether the date of the note had been changed since it was signed by this defendant, and whether any agreement was ever concluded, extending the time of the payment of this note, were properly left to the jury; and that their decision is sustained by all the evidence in the case, and the judgment should be affirmed.

*By the court*, BARNARD, J. The question of the alteration of the note was one of pure fact for the jury. The learned justice who tried this action could not have withdrawn the question from their consideration. The notice of protest was sufficient. It described the note by giving its amount,

date, and the time it was to run, and that it was protested for non-payment. The inference is, that it was demanded and protested on the day it became due (*Young* agt. *Lee*, 2 *Kern.* 551). The only remaining question is as to the discharge of the defendant Backus, by reason of the bank having extended the time of payment to Gilmore, the maker of the note. Gilmore testifies to a verbal agreement with the president of the bank, that the bank was to advance him $10,000, and take mortgages on certain real property for this advance and the old indebtedness, which included this note in suit, and extend the time for the payment of the old debt for one year; that this agreement was reduced to writing by the attorney of the bank, but was never signed by either party; that the mortgages were given in pursuance of this agreement by Gilmore to the bank; that the bank never advanced the money. One of the mortgages given was subsequently canceled by the bank, which cancelation, with the mortgage, was accepted by Gilmore without in any way being paid. This mortgage was introduced in evidence, and shows no extension of time of payment to Gilmore, but is payable on the instant of its execution. The parol agreement, if one was made, was merged in this mortgage, and that only expresses the true agreement between the parties (*Burbank, President* agt. *Beach*, 15 *Barb.* 326). There is, therefore, no sufficient proof that the time of the payment of the note was ever extended by the bank to Gilmore. It was not a discharge of Backus to take this mortgage to secure the note in question, and to re-deliver it to Gilmore without Backus' assent and without payment, if the time of payment was not extended (*Pitts* agt. *Congdon*, 2 *Comst.* 352).

Judgment affirmed, with costs.

LEONARD, J. The case shows no request to charge on the subject of the alteration of the date of the note, and no motion for a nonsuit on that ground at the close of the evidence, and nothing in the charge as contained in the case referring to it; the inference may be fairly drawn, either that the question was properly submitted to the jury, or

wholly waived by the defense after the evidence was all before the court.

The counsel for the defense waived all argument at the hearing of the appeal, in respect to the motion for a nonsuit at the close of the plaintiff's evidence, but it has been considered by a member of the court as a material ground for granting a new trial, on the motion of the court only, and I shall therefore refer to it more at large. The subject is on the defendants' points, but counsel expressly stated that he should not argue it. The question raised by the motion was whether the burden of proof rested upon the plaintiff to explain an alteration of the date of the note.

The alteration was without any attempt at concealment or disguise, which usually attends a fraud; the figure 7 being plainly written over an 8, and affecting the period of maturity only one day, seemed rather an unimportant subject of fraud, under the circumstances of the parties, the bank officers being merely trustees. The presumption of law is in favor of innocence. It is stated in *Greenleaf on Evidence* (§ 564), that "generally speaking, if nothing appears to the contrary, the alteration will be presumed to be contemporaneous with the execution of the instrument." An exception to the rule of the presumption of innocence seems to be admitted by the English authorities in the case of commercial paper, the holder being required to explain every apparent and material alteration operating in his own favor.

The contrary rule has been held in some cases in the United States, *Davis* agt. *Jenney* (1 *Met.* 221), holding that the burden of proof was on the defendant. In *Cowen & Hill's Notes* (2 *vol. p.* 299, *note* 298), it is said to be quite doubtful how far these decisions will be followed by the American courts. The direct contrary has been holden in New Jersey (*Cumberlank Bank* agt. *Hall*, 1 *Halst.* 215).

In *Rankin* agt. *Blackwell* (2 *Johnson's Cases*, 200), it is said by the court that "alterations on the face of a note, unsupported by other proof, would not be competent evidence, it having been insisted by the defense that the jury might

decide from such evidence whether the note had been altered or not."

In *Tillou* agt. *The Clinton & Essex Mutual Insurance Co.* (7 *Barb.* 568), Judge BARCULO says, it has long been a disputed point whether the burden of explaining an alteration apparent upon a paper devolved upon the party seeking to enforce it, or the party sought to be charged. But when the alteration is suspicious, and beneficial to the holder, the more sensible rule prevails, at least in this state and in England, that the presumption is against the party who sets up the paper. (*Vide also Bailey* agt. *Taylor*, 11 *Conn. R.* 531.)

In my opinion the ruling was correct under the circumstances of this case, but if not correct, the defendant did not rely upon his objection, but proceeded to give evidence on the subject, which was followed by other evidence on the part of the plaintiff, so that the fact became material to be submitted to the jury, and could not be determined as a question of law. A new trial will not be granted, on the ground that a nonsuit was refused when the plaintiff rested on insufficient evidence, if the necessary proof is afterwards supplied. (*Schenectady & Saratoga Plankroad* agt. *Thatcher*, 11 *N. Y. R.* 102 *and* 112; *Lansing* agt. *Van Alstyne*, 2 *Wend. R.* 561; *Breidert* agt. *Vincent*, 1 *E. D. Smith*, 542, 544.) The facts subsequently appearing were that the note was drawn by Gilmore, the maker, and indorsed by the defendant Backus, who delivered it to Mr. Platt, the president of the bank, to take up another note for the same amount, made and indorsed by the same parties, and held by the bank, which fell due on the 7th day of November, 1857, upon which day the note in suit, as altered, also bears date. Backus, the indorser, did not notice the date at all at the time he delivered it to Mr. Platt, who died sometime before the trial. Gilmore testified that the alteration was not made by him, and he did not know who made it. The 8th of November, 1857, fell on Sunday. The note was antedated and delivered to the president some days after the time it bears date. Mr. Platt delivered it seventy-six days before maturity to the discount clerk of the bank, who testifies that

the alteration was then upon the note. Three witnesses, who are well acquainted with the handwriting of Mr. Platt, testify that the figure is not in his handwriting, and two of them, being acquainted with the handwriting of Gilmore, the maker, testify that the figure is in his writing. There were some circumstances in the evidence of Gilmore, tending to impair his credit as a witness. The body and date of the note, as at first drawn, were in the writing of Gilmore, and he intended to have it bear date the same day that the former note fell due.

Under this evidence, it was clearly a question for the jury to determine by whom the alteration was made, and whether before or after the indorsement by the defendant. The maker never had the possession of the note after he signed and delivered it to the indorser. In my opinion the evidence sustains the verdict, and that the alteration was contemporaneous with the making and indorsement.

The sole remaining question upon which the members of this general term have any difference of opinion, relates to the sufficiency of the notice of protest.

The only possible defect which can be attributed to this notice is the omission to date it. New York is stated in such relation as to appear to be the place where it emanated, but the day, month and year are omitted. The rule is laid down by Judge WRIGHT as to the facts necessary to appear in a notice of protest in the case of *Hodges* agt. *Shuler* (20 *N. Y. R.* 114, 118). He says, in that case, " a notice which omits an essential feature of the note, or misdescribes it, is an imperfect one, but is not necessarily invalid. It is invalid only when it fails to give that information, which it would have given but for its particular imperfection ; and even in case the notice in itself be defective, if, from evidence *aliunde* of the attendant circumstances, it is apparent that the indorser was not deceived or misled as to the identity of the dishonored note, he will be charged. A note is well described when its maker, payee, date, amount and time and place of payment are stated. In that case the note was made by a railroad company, but was described in the notice as made

by "S. Henshaw, treasurer," and it was held sufficient, although conceded to be a misdescription of the maker, on the ground that it appeared that the indorser was not deceived or misled thereby. In the present case all these particulars are fully complied with.

The notice states that the note is dated "November 7, 1857." The jury found that to be the true date, and that there had not been any fraudulent alteration. The notary proves the time and manner of service, and the defendant does not deny that he received the notice in due time, assuming the true date of the note to be the 7th and not the 8th of November, 1857. The name of the maker, the fact that the defendant is the indorser, the amount, the date, the place of payment, and the time (90 days) are all exactly furnished in the notice.

The time of service was correct, and the defendant received the notice. I am unable to perceive that anything was omitted to apprise the defendant of every requisite in respect to the demand and neglect or refusal of payment by the maker, so as to charge him as an indorser. Had the jury found that there had been an alteration in the date of the note after its indorsement by the defendant, there would have been a failure to serve the notice on the proper day. But this defense of a defective notice would have been unimportant had the jury found for the defendant on the question of alteration, as the note would have been void on that ground.

We must now assume that the true date of the note was that mentioned in the notice. The service was then regular as to time, and the notice contained every essential statement necessary to apprise the defendant that the note which he had indorsed for Gilmore had been protested.

The omission to date the notice cannot mislead where it is served on the proper day. The notice is given at the proper time. There is no evidence that the defendant had indorsed any other note of a like description. We cannot infer that there were others similar to it (*Young* agt. *Lee*, 2 *Kern.* 551.)

The judgment should be affirmed, with costs.

INGRAHAM, P. J (*dissenting*). It is very clear that when the plaintiff rested there was no evidence to submit to the jury on the question of the alteration of the note. The action was against the indorser. The note on its face showed an alteration of the date by writing 7 for the day of the month over 8. No explanation was given of the alteration, and the indorser was sought to be charged on a presentation of the note on the 8th of February, being a recognition by the notary of the 7th of November as the correct date of the note. The liability of the indorser depended on the true date of the note. If the note, when indorsed by him, was dated the 8th, then he could only be made liable by a protest on the 9th of February. If the 7th is adopted as the date of the note, the mode of alteration and the fact of such alteration having been made when the defendant indorsed it must be shown, to hold him liable as indorser. When commercial paper is altered in anything material, the onus rests on the holder to show that such alteration was properly made. As no evidence was given on the subject of the alteration when the plaintiff rested, the case should not have gone to the jury, and the defendant's motion to dismiss the complaint should have been granted.

Was there any evidence given afterwards to alter the state of the case?

The defendant was sworn, and testified that he did not make the alteration; that he did not know who made it, and the first time he saw it was in December, 1860; that he never authorized the alteration to be made; that he received the note from Gilmore, and indorsed it and took it to the Artisans' Bank, and gave it to the president.

Gilmore, the maker, was sworn, and testified that the note was dated the 8th; that he did not make the alteration; that he did not know who did; that he did not authorize any one to do so, and had no knowledge of it until three years after the date of the note.

On the part of the plaintiffs it was proven that the note had been altered before it became due, and was not altered afterwards; that it came to the hands of the discount clerk

when discounted, and that it then bore the same date as now, and was not altered afterwards. It was also proved that the alteration was not made in Platt's handwriting, and was in Gilmore's handwriting. Upon this evidence the question was submitted to the jury. If the action had been against the maker, the evidence would have been submitted properly to the jury as to his liability, but I am at a loss to see anything that brings home to the indorser any knowledge of this alteration. He utterly denies all knowledge of it between the indorsement and the trial, and the only fact on which he is sought to be made liable, is his delivery of the note indorsed by him to the president. There was a period of time when the alteration might have been made not reached by any of the witnesses, viz.: after its delivery and before it was passed by the officer of the bank to the discount clerk; and whether such alteration was made by Platt or by Gilmore would be immaterial. If without the knowledge of the defendant, he would not be chargeable.

I have noticed these facts more at large, as bearing upon the question as to the sufficiency of the notice of protest. The notice of non-payment was not dated. It stated that a note dated 7th November, 1857, and indorsed by the defendant, was protested for non-payment. There is no proof from the defendant as to the day of service, which might perhaps supply the difficulty. The only evidence was the notary's certificate that on the 8th February, 1858, he served the notice by mail.

This case very much resembles that of *Wynne* agt. *Alden*, (4 *Denio*, 163), except that the point decided in that case is presented more strongly by the notice proved here. There the notice was without date, and stated that the note "had this day been presented for payment and payment refused."

The court held the notice defective; saying, the notice being without date, it is impossible to ascertain from the paper itself what day in particular was intended.

In *Ransom* agt. *Mack* (2 *Hill*, 587), it was held that whether the notice was sufficient was a question of law (*Rennie* agt. *Downer*, 23 *Wend*. 720).

· In *Dela Hunt* agt. *Higgins* (9 *Abbott*, 422), it was held that an error in the day on which the note was protested was fatal. The cases of, *Cook* agt. *Litchfield* (5 *Selden*, 279), and *Youngs* agt. *Lee* (2 *Kernan*, 552), were cases in which the date and other matters were all stated but some defect alleged as to the day of protest. In *Home Ins. Co.* agt. *Green*, a notice which omitted the maker's name was held insufficient to charge the indorser.

In *Hodges* agt. *Shuler* (22 *New York*, *p*. 115), WRIGHT, J., in speaking of the sufficiency of the notice, says, " a notice is well described when its maker, payee, date, amount, and time and place of payment are stated." Such should be the contents of the notice. But some of the cases have, from time to time, sought to avoid the hardship of holding a notice defective for any of these requisites having been omitted, if they could find something else to show that the party was not misled or left in ignorance. Thus, where the maker and indorser's names were misplaced, it was held not to mislead, because the error was known to the indorser. So the want of saying that the payment of the note had been demanded and refused, was considered cured by saying the note was protested, and the holder looked to the indorser for payment. So in cases like this, the want of stating the day on which payment was demanded, was relieved by the date of the notice being on the day the note became due. But in no case has it been held that a notice without date, and not stating on what day it was presented for payment, was sufficient.

It seems to me this notice was insufficient for want of a date, or for want of stating the day of demand in the body of it, and that a new trial should be granted.